[L.A. 32173. Dec. 29, 1986.]

WILLIAM PETER BLATTY, Plaintiff and Appellant, v.
NEW YORK TIMES COMPANY, Defendant and Respondent.

## COUNSEL

Richard M. Coleman, John P. Farrell and Coleman & Farrell for Plaintiff and Appellant.

McCutchen, Doyle, Brown & Enersen, Palmer Brown Madden and Lynne M. Yerkes as Amici Curiae on behalf of Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Richard P. Levy, Gail E. Lees, William C. Foutz and David A. Thurm for Defendant and Respondent.

Edward J. McIntyre, John Allcock, Laura Whitcomb Halgren, Gray, Cary, Ames & Frye and Harold W. Fuson, Jr., as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**MOSK, J.**—The fundamental question in this case is whether a newspaper can be held liable for failing to include a book in its list of "best sellers." As we shall explain, we conclude that the answer is no.

### I

Plaintiff William Peter Blatty brought this action for damages against defendant New York Times Company, publisher of the New York Times. Four causes of action are asserted in the original complaint: negligent interference with prospective economic advantage, intentional interference with prospective economic advantage, negligence, and trade libel.

The allegations underlying each of these causes of action may be summarized as follows: Blatty is the author of a number of works of fiction

including *The Exorcist* and a recently published hardback novel entitled *Legion*; the Times publishes a weekly list "purporting to rank best selling books . . . based on actual sales"; because many new books are published each year, authors whose hardback books appear on this list benefit by greater sales of the books themselves and an increased value of paperback and film rights; although the list purports to rank books on the basis of sales and expresses no opinion on their merits, because of the reputation of the Times and its perceived expertise in literary matters the list has a substantial positive influence on the ordering and promotion of books by booksellers and on the purchase of books by consumers; the Times knew or should have known of this influence; *Legion,* authored by Blatty and published by Simon & Schuster, sold more than enough copies, and met all other criteria, to merit inclusion on the list; the Times, however, failed to include *Legion*; as a result, Blatty suffered injury by loss of the benefits that inclusion would have brought. With respect to the intentional-interference claim it is also alleged that Simon & Schuster provided the Times with information to the effect that *Legion* had sold more than enough copies to merit inclusion, but that the Times nevertheless refused to include the book.

Although they bear different labels, the four causes of action each have as their gravamen the alleged injurious falsehood of a statement—viz., the Times falsely represented that the list was based on actual sales; by failing to include *Legion,* the Times falsely represented that the novel did not meet its stated criteria for inclusion; by these misrepresentations, the Times adversely affected the volume of sales of the hardback edition and consequently the value of the paperback and film rights, thereby subjecting Blatty to injury.

Before the Times responded to the complaint, Blatty filed a notice to take certain depositions and produce certain documents. Thereupon the Times generally demurred on the following ground, among others: "The Complaint as a whole fails to state facts sufficient to constitute a cause of action against the Times in that . . . the complained of 'Best Seller' list is not of and concerning plaintiff and therefore cannot constitutionally provide a basis for liability upon a media defendant . . . ." In its memorandum of points and authorities the Times properly requested that the court take compulsory judicial notice, pursuant to Evidence Code sections 452 and 453, of a copy of one week's list which bore the following legend: "The listings above are based on computer-processed sales figures from about 2,000 bookstores in every region of the United States."

Blatty moved to compel discovery, asserting his right to do so despite the pendency of the demurrer. In support he submitted a declaration incorporating by reference an attached newspaper article which he alleged

showed the relevance of the proposed discovery. Led by the article to question the truth of Blatty's allegation that the Times refused to include *Legion* on the list despite its receipt of sales information from Simon & Schuster, the court declined to rule on the demurrer until it could determine whether the allegation was supported by admissible evidence. Over Blatty's objection, the court then issued an order directing the parties to depose certain employees of Simon & Schuster and the Times with regard to the alleged communication and to that matter alone, and the parties did so. Also over Blatty's objection, the court prohibited further discovery until the legal sufficiency of his complaint appeared.

Taking judicial notice of what it considered to be the "uncontradicted facts adduced at the depositions" to the effect that "at no time did [Simon & Schuster] disclose to [the Times] the actual figures of sales of the book," the court made the following ruling, as subsequently clarified, on the demurrer. As to the intentional-interference claim, the court sustained the demurrer but granted leave to amend "to allege in good faith facts to establish (1) that the New York Times violated its public duty or trust to sell or distribute its newspaper to the public containing a fair and honest report of all news without bias or prejudice; and (2) . . . that the New York Times had in its possession reports of the actual sales of the book, *Legion,* which would qualify it for inclusion on the Best Seller List, and deliberately refrained from listing plaintiff's book." As to this cause of action the court ruled that "if the new facts to be alleged also are sufficient to support other causes of action, the complaint may so allege," and that Blatty was "limit[ed] . . . to a cause of action for an intentional omission of *Legion* from the 'Best Seller List' by the New York Times despite its *knowledge* that the sales of the book to the public qualified it for inclusion on the List." As to Blatty's other claims, the court sustained the demurrer "on all grounds stated therein without leave to amend."

In his amended complaint Blatty added Doe defendants and asserted five causes of action: intentional interference with prospective economic advantage based on the Times publication of the list in the newspaper; intentional interference with prospective economic advantage based on the Times marketing of the list separate and apart from its newspaper publication; unfair competition in violation of Business and Professions Code sections 17200 to 17208; false and misleading advertising in violation of Business and Professions Code sections 17500 to 17508; and "breach of [the] public duty and trust to report the news fairly and honestly without bias or prejudice."

The allegations underlying each of these causes of action are essentially those stated in the original complaint with the following relevant modifications and additions: the Times falsely "represented . . . that the List was

an objective, unbiased and accurate compilation of actual sales of books each week by 2000 bookstores in every region of the United States"; and Simon & Schuster told the Times that it had sales figures to substantiate its claim that *Legion* merited inclusion, but the Times failed and refused to review the figures.

Once again, although they bear different labels the five causes of action each have as their gravamen the alleged injurious falsehood of a statement—viz., the Times falsely represented that the list was an accurate compilation of actual book sales; by failing to include *Legion,* the Times falsely represented that the novel did not meet its stated criteria for inclusion; and by so doing the Times caused Blatty to be harmed.

The Times again generally demurred on the ground, among others, that the complaint was "barred by the First Amendment to the United States Constitution and by Article I, Section 2 of the California Constitution, in that those provisions . . . forbid the imposition of liability where, as here, no statement has been made 'of and concerning' the plaintiff . . . ." In its memorandum of points and authorities the Times again effectively made a proper request that the court take compulsory judicial notice of a copy of one week's list and the legend it bore.

The court sustained the demurrer without leave to amend "on grounds stated in the moving papers," ordered the action dismissed, awarded costs to the Times, and entered judgment accordingly. After judgment Blatty moved to tax costs, and the court denied the motion.

Thereupon Blatty filed timely notices of appeal from the judgment of dismissal and the order denying his motion to tax costs. On his motion the Court of Appeal ordered the appeals consolidated.

On appeal, Blatty contended that both the original and the amended complaints stated causes of action, and that in the proceedings on the demurrer to the original complaint the court erred in ordering and taking judicial notice of the depositions and in restricting discovery to those limited depositions. He also contended that the court erred in denying his motion to tax costs.

Relying on our decision in *Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 209 [197 Cal.Rptr. 783, 673 P.2d 660], in which we held that "Although ordinarily an appellate court will not consider the allegations of a superseded complaint [citation], that rule does not apply when the trial court denied plaintiffs leave to include those allegations in an amended complaint," the Court of Appeal concluded

that its review extended not only to the claims of the amended complaint but also to those of the original complaint as to which the trial court sustained the demurrer without leave to amend.

The Court of Appeal held that the facts alleged were legally sufficient to support the intentional interference causes of action of the amended complaint and accordingly reversed the judgment of dismissal in that respect with directions to overrule the demurrer as to those causes of action. It also held that the trial court otherwise properly ruled on the demurrers, and hence that it was not obligated to, and did not, reach Blatty's contentions concerning the discovery rulings; it therefore affirmed the judgment in all other respects. It also dismissed the appeal from the order denying Blatty's motion to tax costs on the ground that because the award of costs to the Times was incident to the judgment, the partial reversal operated to vacate the award and hence this appeal was moot.

Both parties petitioned for review. In his petition Blatty contended that the trial court erred in ordering and taking judicial notice of the depositions for the purpose of ruling on the original complaint and that the Court of Appeal erred in holding that no cause of action was or could be stated for negligence, negligent interference with prospective economic advantage, or unfair competition. In its petition the Times contended that the Court of Appeal erred in holding that on the facts alleged it can be held liable under either or both of the amended complaint's two causes of action for intentional interference with prospective economic advantage.

## II

■ When, as in this case, the ultimate object of our review is the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. We accept as true "all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) We also consider facts that may be judicially noticed. (*Ibid.*) Indeed, when the allegations of the complaint contradict or are inconsistent with such facts, we accept the latter and reject the former. (See, e.g., *Curran* v. *Mount Diablo Council of the Boy Scouts* (1983) 147 Cal.App.3d 712, 722 [195 Cal.Rptr. 325, 38 A.L.R.4th 607]; *Saltares* v. *Kristovich* (1970) 6 Cal.App.3d 504, 510-511 [85 Cal.Rptr. 866], and cases cited.) "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has

been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

The Times contends that Blatty's intentional interference claims—and his other claims as well—do not, and cannot, state a claim on which relief may be granted. In support it argues, inter alia, that the First Amendment to the United States Constitution and article I, section 2, of the California Constitution establish an absolute bar to liability. For the reasons that follow, we agree.

### A

In order to advance society's interest in free and open discussion on matters of public concern and to avoid undue self-censorship by the press, the First Amendment establishes a broad zone of protection within which the press may publish without fear of incurring liability on the basis of injurious falsehood. (*Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 265 [208 Cal.Rptr. 137, 690 P.2d 610]; see *Bose Corp.* v. *Consumers Union of U.S., Inc.* (1984) 466 U.S. 485, 513 [80 L.Ed.2d 502, 525, 104 S.Ct. 1949]; see generally *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 267-283 [11 L.Ed.2d 686, 698-708, 84 S.Ct. 710]; *Curtis Publishing Co.* v. *Butts* (1967) 388 U.S. 130, 155 [18 L.Ed.2d 1094, 1111, 87 S.Ct. 1975] [plur. opn.], 162-165 [18 L.Ed.2d 1115-1117] [conc. opn. of Burger, C. J.], 170 [18 L.Ed.2d 1120] [conc. opn. of Black, J.], 172 [18 L.Ed.2d 1121] [conc. opn. of Brennan, J.]; *Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323, 339-348 [41 L.Ed.2d 789, 804-810, 94 S.Ct. 2997].) Article I, section 2, of the California Constitution, our state constitutional guarantee of freedom of expression and of the press, independently establishes a zone of protection that is broader still. (See *People* v. *Glaze* (1980) 27 Cal.3d 841, 844, fn. 2 [166 Cal.Rptr. 859, 614 P.2d 291]; *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 908-910 [153 Cal.Rptr. 854, 592 P.2d 341], affd. (1980) 447 U.S. 74 [64 L.Ed.2d 741, 100 S.Ct. 2035]; *Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116].)

The necessity for this protection is clear. "The First Amendment presupposes that the freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for truth and the vitality of society as a whole." (*Bose Corp.* v. *Consumers Union of U.S., Inc., supra,* 466 U.S. at pp. 503-504 [80 L.Ed.2d at p. 518].)

The First Amendment establishes its broad zone of protection by means of various rules. Two are especially implicated by the allegations of the original and amended complaints herein.

At the threshold, in defamation actions—in which, of course, the alleged injurious falsehood of a statement is the gravamen of the plaintiff's claim—the amendment has abrogated the common law of strict liability. (*Gertz* v. *Robert Welch, Inc., supra,* 418 U.S. at p. 347 [41 L.Ed.2d at pp. 809-810].) For constitutional purposes it is not enough that the traditional affirmative defense of truth, with the burden of proof on the defendant, be available to the press; rather it is the plaintiff who is required to plead and prove falsehood. (*Id.* at pp. 339-348 [41 L.Ed.2d at pp. 804-810]; *New York Times Co.* v. *Sullivan, supra,* 376 U.S. at pp. 278-280 [11 L.Ed.2d at pp. 705-707]; see, e.g., *Bose Corp.* v. *Consumers Union of U.S., Inc., supra,* 466 U.S. at p. 511, fn. 30 [80 L.Ed.2d at p. 524, fn. 30] [holding that when the plaintiff is a public official or public figure, in order to carry his burden he must prove "actual malice"—i.e., he must "demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement"]; *Gertz* v. *Robert Welch, Inc., supra,* at p. 347 [41 L.Ed.2d at pp. 809-810] [effectively holding that when the plaintiff is a private individual, he must prove that the defendant made the falsehood with at least negligence].)

 In defamation actions the First Amendment also requires that the statement on which the claim is based must specifically refer to, or be "of and concerning," the plaintiff in some way. The *New York Times* case suggested as much, although it could possibly have been read to imply that the requirement derives from the due process clause of the Fourteenth Amendment and ultimately from the state's definition of the tort of defamation, and hence that it is merely an element which the state is presumably free to require or not as it sees fit. (376 U.S. at pp. 288-292 [11 L.Ed.2d at pp. 711-714].) *Rosenblatt* v. *Baer* (1966) 383 U.S. 75 [15 L.Ed.2d 597, 86 S.Ct. 669], however, made it plain that the requirement derives directly and ultimately from the First Amendment. In that case, the United States Supreme Court held that a defamation plaintiff could not constitutionally establish liability without satisfying the requirement even though the governing state law imposed no such prerequisite: "under *New York Times* . . . [the plaintiff is] required to show *specific reference.*" (*Id.* at p. 83 [15 L.Ed.2d at p. 604], italics added.)

 Although the limitations that define the First Amendment's zone of protection for the press were established in defamation actions, they are not peculiar to such actions but apply to all claims whose gravamen is the alleged injurious falsehood of a statement: "[t]hat constitutional protection does *not* depend on the label given the stated cause of action" (*Reader's Digest Assn.* v. *Superior Court, supra,* 37 Cal.3d at p. 265), and no cause of action "can claim . . . talismanic immunity from constitutional limita-

tions" (*New York Times Co.* v. *Sullivan, supra,* 376 U.S. at p. 269 [11 L.Ed.2d at p. 700]). (See, e.g., *Bose Corp.* v. *Consumers Union of U.S., Inc., supra,* 466 U.S. at pp. 493-514 [80 L.Ed.2d at pp. 511-526] [in a product-disparagement action a public figure plaintiff must prove actual malice]; *Time, Inc.* v. *Hill* (1967) 385 U.S. 374, 387-388 [17 L.Ed.2d 456, 466-467, 87 S.Ct. 534] [under a statute granting a person a right of action when his name, picture, or portrait is the subject of a false publication, a public-figure plaintiff must prove actual malice]; *Reader's Digest Assn.* v. *Superior Court, supra,* at p. 265 [in an action for intentional infliction of emotional distress, "false light" invasion of privacy, and "intrusion" invasion of privacy, a public-figure plaintiff must prove actual malice]; *Kapellas* v. *Kofman* (1969) 1 Cal.3d 20, 35, fn. 16 [81 Cal.Rptr. 360, 459 P.2d 912] [same as to "false light" invasion of privacy].)

Further, it is immaterial for First Amendment purposes whether the statement in question relates to the plaintiff himself or merely to his property broadly defined. (See *Bose Corp.* v. *Consumers U. of U.S., Inc.* (D. Mass. 1981) 508 F.Supp. 1249, 1270-1271, revd. on other grounds (1st Cir. 1982) 692 F.2d 189, affd. (1984) 466 U.S. 485 [80 L.Ed.2d 502, 104 S.Ct. 1949] [holding that when a public-figure plaintiff sues to recover damages predicated on injury to his product, just as when he sues to recover damages predicated on injury to his reputation, he must prove actual malice]; *Simmons Ford, Inc.* v. *Consumers Union of U.S.* (S.D.N.Y. 1981) 516 F.Supp. 742, 744, fn. 4 [same].)

The fundamental reason that the various limitations rooted in the First Amendment are applicable to all injurious falsehood claims and not solely to those labeled "defamation" is plain: although such limitations happen to have arisen in defamation actions, they do not concern matters peculiar to such actions but broadly protect free-expression and free-press values. (See *Reader's Digest Assn.* v. *Superior Court, supra,* 37 Cal.3d at p. 265.)

For example, the fault requirement gives "freedom[] of expression . . . the 'breathing space' that [it] 'need[s] . . . to survive.'" (*New York Times Co.* v. *Sullivan, supra,* 376 U.S. at pp. 271-272 [11 L.Ed.2d at p. 701].) As the United States Supreme Court has stated: "Realistically, . . . some error is inevitable; and the difficulties of separating fact from fiction convinced the Court in *New York Times, Butts, Gertz,* and similar cases to limit liability to instances where some degree of culpability is present in order to eliminate the risk of undue self-censorship and the suppression of truthful material." (*Herbert* v. *Lando* (1979) 441 U.S. 153, 171-172 [60 L.Ed.2d 115, 131, 99 S.Ct. 1635]; accord, *Bose Corp.* v. *Consumers Union of U.S., Inc., supra,* 466 U.S. at p. 513 [80 L.Ed.2d at p. 525].)

The "of and concerning" or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt. To allow a plaintiff who is not identified, either expressly or by clear implication, to institute such an action poses an unjustifiable threat to society. For example, as a federal court has cautioned, the absence of the "of and concerning" requirement "could invite any number of vexatious lawsuits and seriously interfere with public discussion of issues, or groups, which are in the public eye. Statements about a religious, ethnic, or political group could invite thousands of lawsuits from disgruntled members of these groups claiming that the portrayal was inaccurate and thus libelous. Such suits would be especially damaging to the media, and could result in the public receiving less information about topics of general concern." (*Michigan United Conservation Clubs* v. *CBS News* (W.D.Mich. 1980) 485 F.Supp. 893, 900, affd. (6th Cir. 1981) 665 F.2d 110.) In the special case in which the plaintiff is a public official suing in response to criticism of governmental operations, an absence of this requirement would allow recovery based on a theory that is "tantamount to . . . libel of government, and therefore . . . constitutionally insufficient." (*Rosenblatt* v. *Baer, supra,* 383 U.S. at p. 83 [15 L.Ed.2d at p. 604].)

The "of and concerning" requirement serves to immunize a kind of statement which, though it can cause hurt to an individual, is deemed too important to the vigor and openness of public discourse in a free society to be discouraged. Statements of opinion, "[h]owever pernicious," are immunized by the First Amendment in order to insure that their "correction [depends] not on the conscience of judges and juries but on the competition of other ideas." (*Gertz* v. *Robert Welch, Inc., supra,* 418 U.S. at p. 339-340 [41 L.Ed.2d at p. 805].) Statements without specific reference are immunized for a similar reason: "'It is far better for the public welfare that some occasional consequential injury to an individual arising from general censure of his profession, his party, or his sect should go without remedy than that free discussion on the great questions of politics, or morals, or faith should be checked by the dread of embittered and boundless litigation.'" (*Michigan United Conservation Clubs* v. *CBS News, supra,* 485 F.Supp. at p. 900.)[1]

Not only does logic compel the conclusion that First Amendment limitations are applicable to all claims, of whatever label, whose gravamen

---

[1]To be referred to specifically, we emphasize, the plaintiff need not be mentioned by name, but may be identified by clear implication. For example, if a company consists of Smith, Jones, and Doe, and a publication asserts "Smith and Jones are the only honest members of the company," certainly the publication specifically refers to Doe and accuses him of dishonesty by clear implication.

is the alleged injurious falsehood of a statement, but so too does a very pragmatic concern. If these limitations applied only to actions denominated "defamation," they would furnish little if any protection to free-speech and free-press values: plaintiffs suing press defendants might simply affix a label other than "defamation" to their injurious-falsehood claims—a task that appears easy to accomplish as a general matter (see, e.g., *Reader's Digest Assn.* v. *Superior Court, supra,* 37 Cal.3d at p. 265 [injurious-falsehood claim asserted as causes of action for defamation, intentional infliction of emotional distress, "false light" invasion of privacy, and "intrusion" invasion of privacy])—and thereby avoid the operation of the limitations and frustrate their underlying purpose.

Regrettably, the foregoing is not mere unsupported speculation. In recent years plaintiffs suing press defendants have more frequently affixed labels other than defamation to injurious falsehood claims and have increasingly achieved some measure of success in their actions. (Mead, *Suing Media for Emotional Distress: A Multi-Method Analysis of Tort Law Evolution* (1983) 23 Washburn L.J. 24, 24-25, 30-44 [discussing defamation, privacy, and intentional infliction of emotional distress theories].)

It follows that to prevent creative pleading from rendering the limitations nugatory, they must be broadly applicable whenever the gravamen of the claim is injurious falsehood.

### B

The causes of action for intentional interference with prospective economic advantage, as stated, are barred by the First Amendment.

It is plain that Blatty's intentional interference claims have as their gravamen the alleged injurious falsehood of a statement. Under the allegations of the amended complaint the assertion they make is as follows: the Times falsely represented that the list was an accurate compilation of actual book sales; by failing to include *Legion,* the Times falsely represented that the novel did not meet its stated criteria for inclusion; by so doing the Times caused Blatty to be harmed. Under the allegations of the original complaint the assertion can be read in substantially the same way, and in his petition for review Blatty himself urged us to do so. Because these causes of action thus have as their gravamen the alleged injurious falsehood of a statement, they must satisfy the requirements of the First Amendment.

It is also plain that Blatty's intentional interference claims fail to satisfy First Amendment requirements.

The claims fail to allege that the list is of and concerning, or specifically refers to, Blatty or his novel. In order to satisfy this requirement, the plaintiff must effectively plead that the statement at issue either expressly mentions him or refers to him by reasonable implication. (Cf. *Kelly* v. *Johnson Publishing Co.* (1958) 160 Cal.App.2d 718, 721-726 [325 P.2d 659] [action for defamation and invasion of privacy]; *Saucer* v. *Giroux* (1921) 54 Cal.App. 732, 733-734 [202 P. 887] [action for defamation].) Blatty, however, can do neither.

To begin with, the list does not expressly refer to Blatty or his novel. Nor does he contend otherwise. Quite the contrary: the failure of *Legion* to appear on the list is the very basis of his action.

Further, the list cannot be reasonably understood to refer to Blatty or his novel by implication. When, as in this case, the statement that is alleged to be injuriously false concerns a group—here, books currently in print and their authors—the plaintiff faces a "difficult and sometimes insurmountable task. If the group is small and its members easily ascertainable, [the] plaintiff[] may succeed. But where the group is large—in general, any group numbering over twenty-five members—the courts in California and other states have consistently held that plaintiffs cannot show that the statements were 'of and concerning them,' *See, e.g., Noral v. Hearst Publications, Inc.,* 40 Cal.App.2d 348, 350, 104 P.2d 860 (1940); *Mullins v. Brando,* 13 Cal.App.3d 409, 422-23 & n. 13, 91 Cal.Rptr. 796 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2231, 29 L.Ed.2d 701 (1971), and cases cited therein; *Neiman-Marcus v. Lait,* 13 F.R.D. 311 (S.D.N.Y. 1952)." (*Barger* v. *Playboy Enterprises, Inc.* (N.D.Cal. 1983) 564 F.Supp. 1151, 1153, affd. (9th Cir. 1984) 732 F.2d 163, cert. den. 469 U.S. 853 [83 L.Ed.2d 110, 105 S.Ct. 175] [discussing Cal. defamation law].)

The group in question here obviously numbers substantially more than 25 members: a visit to even the smallest bookstore establishes this fact. Moreover, Blatty himself has impliedly admitted the point. In the amended complaint he alleges that "To obtain sales figures from bookstores, [the Times] sent to the bookstores forms . . . which [it] prepared; the forms for works of fiction contain and contained a printed list of 36 'bestselling' books which has and had the effect of encouraging reports as to sales of books listed on the forms and discouraging reports as to sales of books not listed on the forms . . . ." By so stating Blatty impliedly alleges that the "forms" should have contained the titles of more than 36 books and hence that more than 36 books were potentially among the top 15 "best sellers."[2]

---

[2]Blatty's claims also fail to effectively allege falsehood. Contrary to Blatty's allegation, the Times did *not* make the crucial false representation of which he complains—viz., that

Not only are the intentional interference claims barred by the First Amendment as stated, Blatty has failed to attempt to carry his burden of showing that it is reasonably possible he can cure the defect by amendment. Limiting our consideration to the "of and concerning" requirement, we reiterate that in sustaining the demurrer to the amended complaint without leave to amend the trial court relied generally "on grounds stated in the moving papers"— one of which was that the complaint was barred by the constitutional provisions forbidding the imposition of liability "where, as here, no statement has been made 'of and concerning' the plaintiff . . . ." Even though he was thus put on notice, Blatty has made no attempt to carry his burden. Hence, we are compelled to conclude that there is no reasonable possibility he can cure the defect.

To prevent this conclusion Blatty insists that the "of and concerning" requirement does not derive from the First Amendment. The point, as we have shown, is plainly without merit.

Blatty then argues in effect that to require a plaintiff to establish that the alleged injurious falsehood published by a press defendant is "of and concerning" him would add a new element to the tort of intentional interference with prospective economic advantage and thereby alter its nature, and that such a result is impermissible. In support he relies on *Falwell* v. *Flynt* (4th Cir. 1986) 797 F.2d 1270, in which the court held that a public-figure plaintiff suing a press defendant for intentional infliction of emotional distress was not required to establish actual malice as that term has commonly been understood: "When applied to a defamation action, the actual malice standard alters none of the elements of the tort; it merely increases the level of fault the plaintiff must prove in order to recover in an action based upon a publication. Requiring a plaintiff to prove knowledge of falsity or reckless disregard of the truth in an action for intentional infliction of emotional distress would add a new element to this tort, and alter its nature." (*Id.* at p. 1275.) The point must be rejected.

The fundamental premise of Blatty's argument is unsound. Under the supremacy clause a state's definition of a tort cannot undermine the re-

---

the list was an accurate compilation of actual book sales. This is so because the Times never made such a representation, whether true or false. The legend of the list—of which the trial court properly took compulsory judicial notice (Evid. Code, §§ 452, subd. (h), and 453), and of which we must therefore take judicial notice as well (*id.*, § 459, subd. (a))—declared merely that "The listings above are *based on* computer-processed sales figures from about 2,000 bookstores in every region of the United States." To the extent that Blatty may mean to argue that the compound adjective "computer-processed" implies, in the words of the amended complaint, an "objective, unbiased and accurate compilation of actual sales," he is unpersuasive: the legend plainly implies that the list represents a general ranking of books based on sales figures from a *sample* of bookstores.

quirements of the First Amendment. That is precisely the teaching of *New York Times*. In that case, the United States Supreme Court held that the First Amendment required the plaintiff to establish falsity (376 U.S. at pp. 279-280 [11 L.Ed.2d at pp. 706-707])—even though state law did not require him to do so (*id.* at p. 262 [11 L.Ed.2d at p. 696]). Indeed, in that case the court effectively held that the First Amendment abrogated the common law of strict liability, added the element of falsity, and thereby altered the nature of the tort. The *Falwell* court misses this crucial point and as a result cannot be followed.[3]

## III

Because each of the other causes of action that Blatty attempted to assert in his original and amended complaints has as its gravamen the alleged injurious falsehood of the list and hence must satisfy First Amendment requirements, and because none of them does or can reasonably allege that the list is "of and concerning" Blatty or his novel, the Court of Appeal did not err in holding that the judgment of dismissal was proper as to them. Thus, we need not discuss Blatty's arguments to the contrary. Nor need we consider his contentions going to the trial court's discovery rulings and its taking of judicial notice of the depositions in passing on the Times demurrer to the original complaint. Since each of the causes of action, as we have concluded, was barred on First Amendment grounds specified in the demurrer, the sustaining of the demurrer was correct and as such must be

---

[3]Blatty argues in effect that the First Amendment is inapplicable to the intentional-interference claim based on the Times's marketing of the list, on the ground that in that context the list constitutes "commercial speech." The argument is unpersuasive.

To begin with, even in that context the list does not constitute commercial speech. "Commercial speech" is defined as speech that does "no more than propose a commercial transaction . . . ." (*Pittsburg Press Co. v. Human Rel. Comm'n* (1973) 413 U.S. 376, 385 [37 L.Ed.2d 669, 677, 93 S.Ct. 2553]; see *Friedman v. Rogers* (1979) 440 U.S. 1, 10, fn. 9 [59 L.Ed.2d 100, 110-111, fn. 9, 99 S.Ct. 887]; see generally *Spiritual Psychic Science Church v. City of Azusa* (1985) 39 Cal.3d 501, 510-511 [217 Cal.Rptr. 225, 703 P.2d 1119].) The list plainly does not come within that definition. That the Times is alleged to have marketed the list for its newspaper profit does not affect the result: commercial motivation does not transform noncommercial speech into commercial speech (see *Friedman v. Rogers, supra,* at p. 11, fn. 10 [59 L.Ed.2d at p. 111, fn. 10]; see also *Va. Pharmacy Bd. v. Va. Consumer Council* (1976) 425 U.S. 748, 761 [48 L.Ed.2d 346, 358, 96 S.Ct. 1817] [stating that "Speech . . . is protected [under the First Amendment] even though it is carried in a form that is 'sold' for profit"]; *New York Times Co. v. Sullivan, supra,* 376 U.S. at p. 266 [11 L.Ed.2d at p. 698] [holding that the fact that the Times was paid for publishing the noncommercial advertisement in question in that case was "immaterial"]).

In any event, Blatty's major premise is false: commercial speech is *not* excluded from First Amendment protections. (E.g., *Bose Corp. v. Consumers Union of U.S., Inc., supra,* 466 U.S. at p. 504, fn. 22 [80 L.Ed.2d at p. 519, fn. 22]; *Schaumburg v. Citizens For Better Environ.* (1980) 444 U.S. 620, 632, fn. 7 [63 L.Ed.2d 73, 85 fn. 7, 100 S.Ct. 826]; *Va. Pharmacy Bd. v. Va. Consumer Council, supra,* 425 U.S. at pp. 758, 770 [48 L.Ed.2d at pp. 356, 363].)

upheld. (*Penziner* v. *West American Finance Co.* (1933) 133 Cal.App. 578, 582 [24 P.2d 501]; *des Granges* v. *Crall* (1915) 27 Cal.App. 313, 316 [149 P. 777]; see, e.g., *Weinstock* v. *Eissler* (1964) 224 Cal.App.2d 212, 224–226 [36 Cal.Rptr. 537].) It follows that Blatty's point is unnecessary to our decision and need not be considered. (E.g., *Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 656, fn. 6 [94 Cal.Rptr. 398, 484 P.2d 70]; *Young* v. *Three for One Oil Royalties* (1934) 1 Cal.2d 639, 647 [36 P.2d 1065].)[4]

The judgment of the Court of Appeal is reversed insofar as it reverses the judgment of dismissal on the amended complaint's causes of action for intentional interference with prospective economic advantage, with directions to affirm the judgment in that respect, and in all other respects the judgment of the Court of Appeal is affirmed; and the order of the Court of Appeal dismissing as moot the appeal from the order denying the motion to tax costs is reversed with directions to resolve that issue on the merits.

Bird, C. J., Reynoso, J., and Panelli, J., concurred.

**GRODIN, J.,** Concurring and Dissenting.—I cannot join in the majority's conclusion that the "of and concerning" requirement applicable to defamation actions is a constitutionally required element of a cause of action for intentional interference with prospective economic advantage, whenever the alleged intentional tort is effectuated through a media publication. A hypothetical example may be helpful in exposing the fallacy of the majority's broad holding.

Suppose that the New York Times, after conducting its normal survey of representative bookstores throughout the country, found that Blatty's novel was, indeed, the top selling book for a particular week based on its own statistics. Suppose further that, despite this information, the Times purposefully substituted one of its own publications for Blatty's book at the top of its best seller list in order to enhance its own book's sales, and entirely omitted Blatty's book from the list.

Under the majority's analysis, Blatty would have no cause of action against the New York Times for intentional interference with prospective economic advantage under these hypothetical facts, because nothing in the false best seller list would have indicated to the reading public that the falsity in the published information was "of and concerning" Blatty's book. It seems clear from this hypothetical, however, that the "of and concerning" require-

---

[4]Throughout this opinion we have used "First Amendment" to refer not only to that provision of the United States Constitution, but also to article I, section 2, of the California Constitution. It is the latter on which we primarily rely.

ment is ill-suited to this type of intentional tort, since the plaintiff is required in any event to prove, as an element of the tort, that the defendant acted for the specific purpose of injuring the particular plaintiff. If a plaintiff can prove that a media defendant knowingly published a false statement for the purpose of inflicting financial injury on him personally, I do not believe that the free speech provisions of either the state or federal Constitution would be offended if the defendant were held liable in damages for such conduct, even if it were not obvious on the face of the publication who the defendant was intending to injure. Thus, I do not join in the majority's broad holding.

Nonetheless, on the specific facts of this case, I concur in the judgment. Although plaintiff has attempted to state a cause of action for intentional interference with prospective economic advantage, the facts that he has alleged—even after being granted leave to amend—are not, in my view, sufficient to support such an action. Plaintiff's allegations do not suggest that the Times intentionally misrepresented the actual results of its bookstore survey for the purpose of injuring plaintiff financially; at most, the allegations suggest that the Times did not do as thorough a job in gathering sales statistics as it should have and that, after Blatty's publisher complained to the Times, the Times should have realized that its survey figures would harm plaintiff financially. Even assuming those allegations are true, they would not support recovery on an intentional-interference theory.

Accordingly, I agree with the majority that the trial court properly sustained defendant's demurrer to all causes of action, and I concur in the reversal of the judgment of the Court of Appeal to the extent that its judgment is inconsistent with this conclusion.

Broussard, J., and Lucas, J., concurred.

Appellant's petition for a rehearing was denied February 26, 1987.