Filed 4/30/13  Forest v. Lintott CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

ROBERT FOREST,

      Plaintiff and Respondent,                A134762

      v.                                (Mendocino County
                                          Super. Ct. No.

MEREDITH LINTOTT,                SCUKCVP01158996)

      Defendant and Appellant.

_____/

This case arises out of statements made by defendant and former Mendocino County District Attorney Meredith Lintott during her 2010 reelection campaign.  During a debate and in a radio advertisement, Lintott made statements about donors to challenger David Eyster's election campaign.  After Eyster won the election, one of Eyster's donors, plaintiff Robert Forest, sued Lintott for defamation.  The trial court denied Lintott's motion to strike (Code Civ. Proc., § 425.16),[1] concluding Forest established a probability of prevailing on the merits of his defamation claim as to the radio advertisement.

_____

[1]    Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.  Section 425.16 provides a "procedural remedy to dispose" of strategic lawsuits against public participation — SLAPP lawsuits — that seek "'to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.'"  (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th

1

Lintott appeals.  She contends the court erred by denying the motion to strike because Forest could not show a probability of prevailing on the defamation claim.  Specifically, she claims Forest could not prevail because the radio advertisement did not identify him and because the debate statements were true.  We affirm.  We conclude Forest established a probability of prevailing on the merits of his defamation claim regarding the radio advertisement because a reasonable listener could have understood the advertisement as communicating the false statement that Forest had a pending felony case against him.[2]

FACTUAL AND PROCEDURAL BACKGROUND

In December 2006, the People charged Forest with felony assault with a firearm (Pen. Code, § 245, subd. (a)(2)).  In January 2008, Lintott — then Mendocino County

---

1467, 1477, quoting *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.)  "Section 425.16 is known as the anti-SLAPP statute." (*Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, 1509.)  Section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

[2]     We grant Lintott's request for judicial notice of this court's unpublished opinion in *People v. Forest* (Aug. 3, 2010, A124144) [nonpub. opn.].  (Evid. Code, §§ 452, subd. (a), 459.)  We do not use the opinion to establish truth of facts in the opinion.  (See *Gilmore v. Superior Court* (1991) 230 Cal.App.3d 416, 418-419.)  We also grant Lintott's request for judicial notice of the superior court's file in *People v. Forest*, case No. MCTM-CRCR-06-74772-02 (*People v. Forest*).  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)
Forest has moved to strike portions of Lintott's reply brief because she claims it raises issues, makes arguments, and lodges evidentiary objections "for the first time . . . none of which were made in the trial court."  (Motion at p. 1, ¶ 1.)  We deny the motion.  We will ignore Lintott's reply brief to the extent it raises arguments for the first time on appeal or in her reply brief.  (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1187-1188 (*Wallace*) [rejecting argument not raised in the trial court]; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [declining to consider arguments raised for the first time in a reply brief].)  See footnote 6, *infra*.

District Attorney — appeared in person and moved to dismiss the complaint on the ground of insufficient evidence. The trial court granted the motion. A few months later, Forest petitioned for a finding of factual innocence pursuant to Penal Code section 851.8. The court denied the petition, concluding the People presented substantial evidence that reasonable cause existed to believe Forest assaulted the victim with a firearm and did not act in self-defense. A division of this court affirmed. (*People v. Forest* (Aug. 3, 2010, A124144) [nonpub. opn.].)

On October 15, 2010, Forest donated $10,000 to Eyster's campaign to defeat then District Attorney Lintott in the November 2010 election.

*The Debate*

On October 21, 2010, Lintott and Forest participated in a debate sponsored by the Mendocino County League of Women Voters. During the debate, the candidates discussed their campaign donors. Eyster identified two donors but did not mention Robert Forest. In response, Lintott said: "There's a very important issue that I want to talk to you about, especially being District Attorney. And it does have to do with donations, amounts, and where they come from. That is why we have these public documents. [¶] Mr. Eyster's second largest donor is Robert Forest, in the amount of $10,000. Mr. Forest was prosecuted — actually the case [was] filed before I came into office. It was regarding, on Franklin Street, a pulling of a gun and threatening a homeless person. It's worked its way through the courts. He's tried to be found factually innocent so that he can get his concealed weapons permit. Judge Henderson said, 'No, you're not factually innocent.' This man is still trying to get a concealed weapons permit and our office has stood in his way. He gives Mr. Eyster $10,000."

Lintott continued, "Next we need to go to Jeffrey Bord's father. Jeffrey Bord has two felony open cases in our office currently being prosecuted. His father gave $2,000 to Mr. Eyster, on an open case. [¶] Yet another open case with a co-op over here, Gabe Martin, $750. [¶] You need to look at the source. And I submit to you that you should not have a D.A. that accepts money when their power is at stake on open cases."

3

The debate was broadcast on Mendocino Coast Television the following day and a video of the debate was posted on the Mendocino County League of Women Voters' website.

*The Radio Advertisement*

Several Mendocino County radio stations broadcast the following advertisement for Lintott in late October and early November 2010:

"Beware of D.A. candidate Eyster; he is not what he appears. Eyster paid to have his name listed on two political mailers that pretend to be from the democratic party. Eyster isn't a democrat and the official Democratic endorsement went to his opponent, District Attorney Lintott.

"Eyster has also failed to tell you about the cash gifts to his campaign from men with pending felony cases; one in the amount of $2,000, another in the amount of $750. The most alarming, $10,000, comes from a man who assaulted an unarmed man with a loaded gun. Seeking a concealed weapons permit, he petitioned the court and was opposed by Lintott. The courts agreed with Lintott. Eyster has pocketed a $10,000 donation. Are concealed weapons permits now on sale in Mendocino County?

"District Attorney Lintott is the real Democrat in the race, unbought and unbossed. Meredith refuses to take money from those seeking favors and special treatment. A vote for Lintott is a vote for justice we can trust."

*The Defamation Lawsuit*

Eyster won the election. In 2011, Forest sued Lintott for defamation and for intentional and negligent infliction of emotional distress. In his two-part defamation claim, Forest alleged Lintott falsely accused him in the radio advertisement of: (1) having felony charges pending against him; (2) assaulting a man with a loaded gun; and (3) and contributing money to the Eyster campaign "as a bribe to obtain a concealed weapons permit." Forest also alleged Lintott made similar "slanderous statements" about him at the debate by claiming he "pulled a gun and threatened a homeless person[,] . . . committed the crime of assaulting another man with a loaded firearm" and "brib[ed] and/or attempt[ed] to bribe a public official."

4

*The Court's Denial of Lintott's Special Motion to Strike*

Lintott moved to strike the complaint pursuant to section 425.16. She contended the conduct alleged in the complaint was subject to the anti-SLAPP statute and that Forest could not establish a probability of prevailing on the merits.

In opposition, Forest argued Lintott did not establish her statements were protected within the meaning of section 425.16, subdivision (e). Forest also claimed he demonstrated a probability of prevailing on his defamation claim because Lintott's statements were false and made with actual malice. As Forest explained, he: "(1) had no criminal charges pending; (2) [ ] had not committed a criminal offense by assaulting an unarmed man with a firearm; [and] (3) [ ] had merely contributed funds to [Eyster's] election campaign — he did <u>not</u> bribe or attempt to bribe anyone. . . ." (Fns. omitted.) In support of his opposition, Forest submitted an audio recording and transcript of the radio advertisement, a video and transcript of the debate, and the candidates' campaign finance statements. He also submitted a request for judicial notice of the criminal complaint and information in *People v. Forest* and the trial court's order dismissing the case.

Forest also submitted a declaration averring Lintott defamed him in the radio advertisement and during the debate by stating he: "(a) [ ] had felony criminal charges *pending* . . . at the time of the radio broadcast; (b) [ ] had committed the crime of assaulting an unarmed man with a loaded firearm; and (c) [ ] had bribed or attempted to bribe . . . Eyster into issuing [him] a concealed weapons permit by donating $10,000 to his election campaign." Forest stated, "I am informed and believe that . . . Lintott was of the opinion I had <u>not</u> committed any criminal offense; and, that I had acted in lawful self-defense. . . . [¶] I believe . . . Lintott publicized slanderous statements about me as retribution for my having made the contribution to Mr. Eyster's campaign. . . . [¶] Lintott knew that the statements that she had made about me were false and/or she acted with reckless disregard as to whether the statements were true." Forest averred he "personally heard [the] radio advertisement broadcast on different radio stations" in late October 2010 and early November 2010 and that friends and acquaintances called him and told

5

him what Lintott "was saying about [him]."[3]  Finally, Forest described the "severe mental and emotional distress" he suffered "as a result of what . . . Lintott, publicly stated about [him]."

In reply, Lintott argued the statements were protected speech under section 425.16 and Forest did not demonstrate a probability of prevailing because the radio advertisement did not identify Forest, and because the debate statements were true. Lintott urged the court to disregard Forest's declaration where he opined, "on 'information and belief[,]'" about her state of mind when she made the statements. Additionally, Lintott submitted a request for judicial notice of the superior court file in *People v. Forest* pursuant to Evidence Code section 452, subdivision (d).

Forest moved to continue the hearing on the motion to strike and requested leave to conduct discovery.  He opposed the request for judicial notice, claiming it was untimely and unaccompanied by "a copy of the material that she is requesting the court take judicial notice."  He also claimed Lintott raised new arguments for the first time in her reply papers.  Lintott later submitted an amended request for judicial notice attaching the court's file in *People v. Forest*.

At the hearing on the motion, the court granted Lintott's amended request for judicial notice of the court's file in *People v. Forest* and noted it would consider the transcripts of the debate and radio advertisement.  In overruling Forest's objections to the request for judicial notice, the court explained, "because of the nature of this proceeding and because . . . I need to determine if there's a probability of prevailing on the merits, I think I need that information that's in the request for judicial notice. . . ."  The court also denied Forest's motion to continue the hearing to conduct discovery.

After the hearing, the court issued a written order denying the motion to strike.[4] The court determined Forest did not establish a probability of prevailing on the

---

[3]    In a declaration, Forest's attorney averred he "personally heard [the] radio advertisement broadcast numerous times on several different radio stations" in late October and early November 2010; he did not aver he understood the advertisement to be about Forest.

6

defamation claim pertaining to the debate statements because what Lintott said at the debate "was substantially true." The court explained the superior court file in *People v. Forest* "does show that Forest was prosecuted for a case which factually involved pulling a gun on a homeless person. . . . [T]he file also shows that Forest made a motion to have a finding of factual innocence which was opposed by the DA and denied by Judge Henderson. That denial was upheld on appeal. Lintott's statements at the debate closely reflect the factual recita[tions] in Judge Henderson's 2008 Order Denying Petition for Finding of Factual Innocence and the (unpublished) opinion of . . . the First Appellate Division denying Forest's appeal of Henderson's decision."

The court reached a different conclusion regarding the radio advertisement. It explained, "the implication of [the] advertisement is that the person who gave Eyster's campaign $10,000 has a felony complaint pending against him; that the same person committed the crime of assaulting an unarmed man with a loaded gun; and that the $10,000 contribution was an attempt to influence Eyster to issue a concealed weapons permit." The court concluded, "[f]rom the debate and other public information such as Eyster's campaign disclosures people other than Forest could reasonably understand that the ad referred to Forest." The court continued, "[s]etting aside the fact that the DA does not issue such permits and that Forest wasn't specifically named in the ad, [Forest's] showing is sufficient to meet the minimal standard applicable to the second prong of the SLAPP test. This is by no means a determination that Forest will prevail at trial. It is worth noting that the case law seems to permit candidates to say almost anything about

---

4    Forest served and filed a notice of entry of order on February 6, 2012, a few days later. On February 29, 2012, Lintott submitted a proposed order stating the motion to strike had been granted as to the debate statements but denied as to radio advertisement. Lintott did not show the order to opposing counsel before presenting it to the court. Lintott filed a notice of appeal on February 27, 2012 and the court signed Lintott's proposed order the next day. On April 3, 2012 and at Forest's request, the court struck the order prepared by Lintott and entered a new order denying the motion to strike in its entirety. We exercise our discretion to address the merits of Lintott's premature appeal, particularly because Forest "does not argue for dismissal of the appeal, and the issues are fully briefed." (*Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1019.)

each other, but Forest was not a candidate.  The statements concerning Forest were directed at . . . Eyster, but nonetheless implied that Forest engaged in reprehensible conduct. . . . Allowing this action to proceed seems inconsistent with the profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide open.  Forest has, however, at least with respect to the political ad, demonstrated the minimal showing necessary to defeat the special motion to strike."  Citing *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 100 [(*Mann*)] and *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 906, the court determined a plaintiff "need only show a probability on some part of his claim . . . The judge need not parse out the individual theories or parts of theories that have merit.  Once the plaintiff has shown a probability of prevailing on a cause of action under any theory the motion to strike must be denied."

DISCUSSION

Resolving the merits of a special motion to strike requires "a two-part analysis, concentrating initially on whether the challenged cause of action arises from protected activity within the meaning of the statute and, if it does, proceeding secondly to whether the plaintiff can establish a probability of prevailing on the merits."  (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699 (*Overstock*); *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 (*American Taxpayers Alliance*).)  Because Forest concedes Lintott made a threshold showing the complaint arose from protected activity, we consider only whether Forest met his burden of demonstrating a probability of prevailing on his defamation claim.  (*Overstock, supra,* 151 Cal.App.4th at p. 699.)

To establish a probability of prevailing, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations].'"  (*American Taxpayers Alliance, supra,* 102 Cal.App.4th at p. 460.)  The process used to make this determination "is similar to the standard used in determining motions for nonsuit, directed verdict, or summary judgment.  [Citations.]

8

[Citation.]  To make our determination, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." [Citation.]  The motion to strike should be granted if, as a matter of law, "the properly pleaded facts do not support a claim for relief.  [Citation.]"  [Citation.]"'" (*Ibid.*, quoting *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 809 (*Seelig*).)  We review the court's ruling on the motion to strike de novo.  (*Mann, supra,* 120 Cal.App.4th at p. 103.)

Lintott contends Forest cannot show a probability of prevailing on his claim for defamation arising out of the radio advertisement because the advertisement did not identify him.  "In defamation actions the First Amendment . . . requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way." (*Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1042 (*Blatty*).)  "The 'of and concerning' or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt." (*Id.* at p. 1044.)

"To be referred to specifically, . . . the plaintiff need not be mentioned by name, but may be identified by clear implication." (*Blatty, supra,* 42 Cal.3d at p. 1044, fn. 1; *Seelig, supra,* 97 Cal.App.4th at p. 809 ["'[s]tatements . . . cannot form the basis of a defamation action if they cannot "'reasonably [be] interpreted as stating actual facts' about an individual"'"]; *Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1404 (*Ferlauto*) [same]; see also *Barger v. Playboy Enterprises, Inc.* (N.D. Cal. 1983) 564 F. Supp. 1151, 1153 [statement must be "*reasonably susceptible* of special application to a given individual"].)  "Under California law, '[t]here is no requirement that the person defamed be mentioned by name. . . . It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff . . . [or] if the publication points to the plaintiff by description or circumstance tending to identify him.'" (*Church of Scientology of California v. Flynn* (9th Cir. 1984) 744 F.2d 694, 697, quoting *DiGiorgio Fruit Corp. v. AFL-CIO* (1963) 215 Cal.App.2d 560, 569-570 (*DiGiorgio*).)

9

The radio advertisement does not specifically refer to Forest. As a result, the question before us is whether it identifies Forest by "clear implication." (*Blatty, supra,* 42 Cal.3d at p. 1044, fn. 1.) The answer is yes. As we discuss below, a reasonable listener could have understood the radio advertisement as communicating the false statement that Forest had a "pending felony case."[5]

Lintott claims "[t]he only person who . . . identified [ ] Forest in connection with the advertisement is [ ] Forest himself, who publicly proclaimed his identity as the person referred to in the advertisement by filing this lawsuit." She is wrong. In his declaration in opposition to the motion to strike, Forest averred he "personally heard this radio advertisement broadcast on different radio stations" *and* that his friends and acquaintances called him and told him what Lintott "was saying about [him]." This creates an inference that those who heard the radio advertisement understood it to be about Forest because the advertisement mentioned circumstances — i.e., a description of *People v. Forest* — "'tending to identify [him].'" (*Church of Scientology, supra,* 744 F.2d at p. 697.)[6] We conclude Forest presented evidence sufficient to show the radio advertisement was "of and concerning" him. (*Blatty, supra,* 42 Cal.3d at p. 1044; *DiGiorgio, supra,* 215 Cal.App.2d at pp. 569-570 ["It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff;" concluding "the trier of fact could determine the film" shown to agricultural workers "was depicting" the corporation and its founder "[e]ven though the corporation was not named" in the film].)

---

[5]    We do not opine on the veracity of the other statements in the advertisement, i.e., whether Forest assaulted an unarmed man and whether he tried to influence Eyster, nor do we opine on whether there may be defenses to a defamation claim arising out of those statements.

[6]    In her reply brief, Lintott attacks various aspects of Forest's declaration as "self-serving" and lacking in "evidentiary value." These attacks are unavailing for two reasons. First, Lintott does not challenge the portion of Forest's declaration describing how his friends and acquaintances were able to identify him as the subject of the radio advertisement. Second, Lintott concedes she did not object to the declaration on these grounds in the trial court and did not raise this argument in her opening brief.

Though not cited by either party, *Dewing v. Blodgett* (1932) 124 Cal.App. 100 (*Blodgett*) is instructive. There, a series of newspaper articles contained defamatory remarks about the "court reporter" of Santa Barbara County without naming the court reporter. The court reporter sued for defamation. (*Id.* at p. 102.) The trial court overruled the defendant's demurrer and the appellate court affirmed. The *Blodgett* court held the complaint stated a claim for defamation because the court reporter alleged, among other things, that he was the official court reporter for that county, "known and recognized as such by the public and readers of said . . . publication" and that the publications were "of and concerning" him. (*Id.* at p. 103.) The *Blodgett* court also determined sufficient evidence supported the verdict for plaintiff. (*Id.* at p. 104.) It explained, "[t]he fact that the name of the plaintiff was not contained in the libelous articles, does not deprive the plaintiff of his remedy, when those articles without using the plaintiff's name, gave a description which was capable of directing attention to him, and when, as here, it was alleged and . . . proved that readers of the articles understood them as referring to the plaintiff."[7] (*Id.* at p. 105.) The same is true here. The radio advertisement did not mention Forest's name, but it gave a description of him that "was capable of directing attention to him," as demonstrated by Forest's declaration averring those who heard the advertisement understood it "as referring" to him. (*Ibid.*)

Forest is also identifiable when the advertisement is considered together with Eyster's campaign disclosures and with the statements Lintott made at the debate. "The

---

[7]    See also Prosser and Keeton, The Law of Torts (5th ed. 1984) section 111, page 783, footnotes omitted [a publication may be defamatory without referring to the plaintiff; the plaintiff "need not . . . be named, and the reference may be an indirect one, with the identification depending upon circumstances known to the hearers, and it is not necessary that every listener understand it, so long as there are some who reasonably do"]; 2 Harper et al., Harper, James and Gray on Torts (3d ed. 2006) section 5.7, pages 72-73, footnotes omitted ["[i]t is not necessary that the whole world know who was intended; it is enough that some person or persons recognized the plaintiff as the person defamed. It is not even necessary that the plaintiff be named. Plaintiff may be adequately identified by various descriptions or associations so as to be reasonably recognizable as the one to whom the defamatory publication refers"].

statements at issue are to be examined in context, and considering the totality of the circumstances." (*D.A.R.E. America v. Rolling Stone America* (C.D. Cal. 2000) 101 F.Supp.2d 1270, 1290; *Ferlauto, supra,* 74 Cal.App.4th at p. 1405 [applying totality of circumstances test to "assess[ ] the context of phrases from an evaluation of the entire book"].) Here, Eyster's campaign disclosure lists Forest as having donated $10,000. At the debate, Lintott specifically referred to Forest's $10,000 donation. She also described the circumstances leading to the prosecution and Forest's petition for a finding of factual innocence, and claimed Forest was trying to obtain a concealed weapons permit. In the radio advertisement, Lintott did much the same thing: she mentioned the amount of Forest's donation, the circumstances leading to the prosecution, Forest's petition to the court and his attempt to obtain a concealed weapons permit. The only material difference between the radio advertisement and the debate is the advertisement does not mention Forest's name. When considered with the debate statements and the campaign disclosures, however, the advertisement identifies Forest.

Lintott urges us to examine "each allegedly defamatory statement . . . on its own" and to disregard the debate statements and Eyster's campaign disclosures — both of which identify Forest — because she did not intend the advertisement and the statements she made in the debate to be "a package." To support this argument, Lintott relies on a trial court decision in *In re Cable News Network* (N.D. Cal. 2000) 106 F.Supp.2d 1000, 1001-1002 (*Cable News*).) In that case, the plaintiffs sued CNN and Time Magazine in several related cases for defamation after both news organizations reported on a particular military operation during the Vietnam War. (*Id.* at p. 1001, fn. 1.)

The issue in *Cable News* was whether Civil Code section 48 required the plaintiffs to demand a retraction from Time Magazine. (*Cable News, supra,* 106 F.Supp.2d at p. 1001.) In dicta, the court stated the magazine article did not identify the plaintiffs and was not "of and concerning" them, but allowed the plaintiffs to proceed under the theory that the magazine article and the television broadcasts "were marketed as a single 'package,' and that because the CNN broadcasts identified Plaintiffs[,] the 'of and concerning' requirement also [was] satisfied with respect to the Time article." (*Ibid.*) In

12

a footnote, the *Cable News* court noted it had "been unable to find any authority addressing the merits of Plaintiff's 'package' theory. This lack of authority is not particularly surprising, because the joint marketing of stories through television shows and magazine articles is a fairly recent phenomenon. The Court has permitted Plaintiffs to proceed with the 'package' theory subject to later proof that the CNN broadcasts and the Time article were prepared and promoted as one single 'package.'" (*Id.* at p. 1001, fn. 3.)

*Cable News* does not assist Lintott for several reasons. First, we are not bound by decisions of lower federal courts. (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 716, fn. 12.) Second, the court's comments about the "package" theory in that case are dicta, which we are not bound to follow. (*Fairbanks v. Superior Court* (2009) 46 Cal.4th 56, 64 ["a judicial decision is not authority for a point that was not actually raised and resolved"].) Third, *Cable News* is distinguishable because — as we have already concluded — the radio advertisement standing alone satisfies the "of and concerning" requirement. Fourth, and perhaps most importantly, the *Cable News* court allowed the plaintiffs to proceed on the "package" theory.

*New York Times Co. v. Sullivan* (1964) 376 U.S. 254 (*Sullivan*) and *Rosenblatt v. Baer* (1966) 383 U.S. 75, 83 (*Rosenblatt*) — two other cases upon which Lintott relies — do not alter our conclusion. *Sullivan* concerned the requirement that a public official in a defamation case prove actual malice. (*Sullivan, supra,* at p. 283.) There, the United States Supreme Court determined the plaintiff did not prove actual malice; the court also concluded "the evidence was constitutionally defective" because "it was incapable of supporting the jury's finding that the allegedly libelous statements were made 'of and concerning'" the plaintiff because the advertisement at issue did not mention the plaintiff by name or by his official position (*id.* at p. 288) and because the plaintiff's evidence at trial did not "connect the statements" in the advertisement to him. (*Id.* at p. 292.) The *Sullivan* court ultimately concluded the advertisement was an "impersonal attack on governmental operations" rather than an attack on "an official responsible for those operations." (*Ibid.*)

13

Lintott's reliance on *Sullivan* is unavailing because Lintott does not claim on appeal that Forest is a public official required to establish actual malice.[8] So, too, is her reliance on *Rosenblatt*. In that case, the United States Supreme Court considered whether the plaintiff was a public official under *Sullivan* and, if so, whether certain jury instructions were proper. (*Rosenblatt, supra,* 383 U.S. at p. 83.) As a result, *Rosenblatt* has no application here.

Here, the court was not required to find that Forest's interpretation of the radio advertisement was "the *only* permissible meaning that might reasonably be ascribed to it." (*Yow v. National Enquirer, Inc.* (E.D. Cal. 2008) 550 F. Supp.2d 1179, 1184 [denying motion to dismiss where a reasonable reader could have understood a tabloid article as "communicating the false and defamatory statement that [the plaintiff] used cocaine"].) At this stage, "the Court must merely be satisfied that *one* of the reasonable meanings of the [advertisement]" was that Forest had a pending felony case. (*Ibid.*) Here, a natural and reasonable interpretation of the advertisement is that it contains the statement that Forest had a felony case pending against him when the advertisement aired in October and November 2010. This statement was false because the court dismissed *People v. Forest* in 2008, at Lintott's request. Lintott does not argue otherwise. At oral argument, counsel for Lintott conceded Forest did not have a felony case "pending" against him when the advertisement aired.

We conclude Forest made the minimal showing necessary to defeat Lintott's motion to strike because he established a probability of prevailing on the merits of his defamation claim pertaining to the radio advertisement. "[I]f there is any probability of prevailing on any act alleged under the heading of a 'cause of action,' then the cause of action is not meritless and should not be struck." (*Wallace, supra,* 196 Cal.App.4th at p. 1212, citing *Oasis West Realty v. Goldman* (2011) 51 Cal.4th 811, 822.) Because Forest

---

**8**      In its ruling, the court here concluded "[f]or purposes of this ruling . . . making a substantial campaign contribution alone renders Forest a limited public figure. [Citation.] Further evidence at trial might put that at issue, but the evidence before the court at this point is not sufficient to support a determination that Forest is a public figure."

established a probability of prevailing on the statements made in the radio advertisement, the defamation cause of action was not meritless. Accordingly, the court properly denied Lintott's motion to strike.

Next, Lintott claims Forest cannot show a probability of prevailing as to the statements she made during the debate because the statements were true. Forest does not disagree. He does not claim the court erred by concluding he could not establish a probability of prevailing on the merits of the defamation claim regarding the debate. Instead, Forest contends the court erred by taking judicial notice of the superior court file in *People v. Forest*, because "it used the contents [of the file] as conclusive evidence [he] did in fact assault a homeless man with a firearm." According to Forest, it was error for the court to judicially notice the superior court file because Lintott: (1) sought judicial notice in conjunction with her reply rather than with her motion to strike; and (2) did not provide the court or Forest with a copy of the material that was the subject of judicial notice until shortly before the hearing on the motion to strike. Forest also argues the court "should not have used the contents of the criminal file as evidence without having first found that the doctrine of collateral estoppel applied."

We need not address Forest's claims regarding judicial notice because we have concluded the court properly denied Lintott's motion to strike and because we do not opine on the veracity of Lintott's statements in the advertisement that Forest assaulted an unarmed man. (See fn. 5, *infra*.)

DISPOSITION

The order denying Lintott's motion to strike is affirmed. Forest is awarded his costs on appeal.

15

                              _____

                              Jones, P.J.

We concur:


_____

Needham, J.


_____

Bruiniers, J.