La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
La controversia de epígrafe nos requiere sopesar el de-recho a la libertad de expresión, principio fundamental de-mocrático, frente al derecho personal e intransferible al *697 honor; a la vez, precisar las bases de la acción por difama-ción en nuestro ordenamiento. Relatamos los hechos según surgen del expediente.
H
Los días 15 y 18 de septiembre de 2000 Noticentro 4, uno de los noticiarios que transmite la estación de televi-sión que opera Televicentro de Puerto Rico, difundió un reportaje sobre una nueva modalidad de fraude bancario. El reportaje se presentó en dos segmentos diferentes, en los cuales apareció en la pantalla la imagen del Sr. Gilberto Colón Pérez, quien es una figura privada. En el primer segmento se presentaron las fotografías y los nombres de una pareja o dúo sospechoso de haber cometido los de-litos imputados en la crónica, mientras que en el segundo se hacía referencia a “unos delincuentes y unas gangas” sin mencionar nombres o presentar fotografía alguna de sus miembros.
A raíz de este suceso, el 6 de marzo de 2001 Gilberto Colón Pérez y su esposa, María Ramírez Alvarez, presen-taron una demanda sobre daños y perjuicios por libelo, ca-lumnia, o ambos, en contra de Televicentro ante el Tribunal de Primera Instancia, Sala Superior de Arecibo. En ésta alegaron que Noticentro había utilizado la imagen del demandante sin autorización y que la publicación había resultado ser libelosa, puesto que identificaba al señor Co-lón Pérez con la comisión de un delito, al permitir que su imagen figurara en la pantalla mientras se ofrecía infor-mación sobre el crimen. Luego de varios trámites procesa-les, ambas partes solicitaron que se dictara sentencia sumariamente.
Tras la celebración de una vista argumentativa, el Tribunal de Primera Instancia emitió una resolución interlo- *698 cutoria a favor de los demandantes.(1) Concluyó que el no-ticiario no fue diligente en la transmisión del reportaje y faltó al deber de previsión por no anticipar el riesgo de lesionar la imagen de una persona que no estaba relacio-nada con la noticia, al difundir su figura y permitir que el público televidente la confundiera o asociara con los delitos informados. Además, el foro de instancia determinó que la imagen del demandante fue utilizada, publicada y trans-mitida sin su autorización o consentimiento, y Televicentro fue negligente al no editar la transmisión de manera que se eliminara u ocultara dicha imagen. En fin, entendió el foro inferior que Televicentro violó el derecho a la imagen del demandante y que la publicación fue libelosa porque el rostro del señor Colón Pérez quedó indebidamente aso-ciado con la noticia y, en consecuencia, con el delito impu-tado en el reportaje. Quedó por resolver la cuantía de los daños.
Televicentro cuestionó esta decisión ante el Tribunal de Apelaciones. Le imputó al tribunal de instancia haber errado al determinar que la publicación se había hecho de forma negligente. Señaló, además, que en la demanda no se había alegado una causa de acción por uso de imagen, por lo cual el tribunal no tenía ante sí una controversia respecto a esto debidamente presentada para su adjudicación. El foro intermedio apelativo confirmó la re-solución del tribunal de instancia en cuanto al aspecto de la negligencia y determinó que se trataba de una publica-ción libelosa de su faz. Afirmó que al permitir que el rostro del señor Colón Pérez figurara en la pantalla, la estación *699 de televisión había incurrido en libelo por asociación, por-que el reportaje permitía que se asociara al demandante con el delito imputado. En cuanto a la causa de acción por uso de la imagen, el Tribunal de Apelaciones revocó la de-terminación de instancia al concluir que no se podía confi-gurar dicha reclamación puesto que no se había alegado en la demanda original, ni se había enmendado a esos efectos.
Aún inconforme, Televicentro recurrió de esta decisión y señaló que el Tribunal de Apelaciones había errado al en-tender que procedía dictar sentencia sumaria a favor de los demandantes, ya que en el presente caso el interés público y la libertad de expresión superan el derecho al honor del señor Colón Pérez. Añadió Televicentro que había verifi-cado la información antes de presentarla, ya que obtuvo las imágenes del expediente oficial de la policía. Además, ex-puso que el demandante no podría probar que la informa-ción publicada se refería específicamente a él.
Expedimos el auto y luego de un detenido examen del expediente estamos en posición de resolver.
II
A. Para atender adecuadamente la controversia ante nuestra consideración es necesario revisar el desarrollo del derecho al honor o la reputación, y su relación con la liber-tad de expresión, para concebir soluciones acordes a nues-tra cultura jurídica y justas a las controversias que surjan de las pugnas entre estos derechos. Además, debemos pre-cisar el derecho aplicable a controversias de esta naturaleza.
Originalmente, los límites del derecho relativo a la pro-tección a la honra los estableció la doctrina de la iniuria (injuria) de las leyes civiles romanas y la acción de jactan-cia de la ley de Partidas de Alfonso X el Sabio. R. Martínez Alvarez, El derecho a la honra y al honor, 17 (Núm. 2) Rev. *700 Jur. U.P.R. 139, 145-146 (1947); A. Bernabé Riefkohl, Hasta la vista, baby!: Es hora de decir adiós a la ley de Libelo y Calumnia de 1902, 73 (Núm. 1) Rev. Jur. U.P.R. 59, 61 (2004). Véase además: Cortés Portalatín v. Hau Co-lón, 103 D.P.R. 734 (1975).(2) Luego, durante el siglo XIX, y próximo al triunfo de las revoluciones burguesas, tomó auge el reconocimiento del derecho al honor. J. Plaza Pe-nadés, El derecho al honor y la libertad de expresión, Valencia, Tirant Lo Blanch, 1996, pág. 27. Sin embargo, los codificadores de la época entendieron que la pérdida de la vida y la ofensa del honor no son bienes valorables en dinero, por lo cual decidieron no incluirlos en los códigos civiles. S. Muñoz Machado, Libertad de prensa y procesos por difamación, Barcelona, Ed. Ariel, 1988, pág. 46.(3) Es-timaban los redactores que esta materia era propia de las leyes políticas, razón por la cual los derechos de la perso-nalidad fueron fundamentalmente ejercidos por los medios que proporcionaba el derecho penal y el administrativo. J. Castán Tobeñas, Los Derechos de la Personalidad, Madrid, Instituto Editorial Reus, 1952, págs. 29-30.
Es un hecho conocido que en 1898 la soberanía sobre nuestro país se trasladó de España a Estados *701 Unidos. Desde entonces nuestro derecho fue objeto de un proceso de adecuación al derecho angloamericano conocido como “americanización”. J. Trías Monge, El choque de dos culturas jurídicas en Puerto Rico: el caso de la responsabi-lidad civil extracontractual, New Hampshire, Equity Publishing Co., 1991, págs. 135-139.(4) Es en ese contexto que la Asamblea Legislativa de Puerto Rico adoptó, en 1902, la Ley de Libelo y Calumnia de Puerto Rico, en la cual se codificaron los rasgos básicos del derecho común anglo-sajón que gobernaban en aquella época las reclamaciones por difamación. Ley de 19 de febrero de 1902 (32 L.P.R.A. sec. 3141—3149).(5) Véase, además: Gierbolini Rosa v. Banco Popular de Puerto Rico, 930 F. Supp. 712, 716 (D.P.R. 1996); Villanueva v. Hernández Class, 128 D.P.R. 618, 646 (1991). Sin embargo, la parte de dicho Código de derecho privado relativa a responsabilidad civil extracon-tractual no sufrió alteraciones. De esta manera, nos en-frentamos a un derecho de responsabilidad extracontrac-tual principalmente civilista y a una ley de libelo de ascendencia norteamericana.
A partir de la aprobación del mencionado estatuto este Tribunal exigió, por décadas, que las reclamaciones por difamación se fundamentaran exclusivamente en la ley *702 especial. Pou v. Valdejuly et al., 6 D.P.R. 133, 137 (1904); Quiñones v. J.T. Silva Banking & Commercial Co., 16 D.P.R. 696 (1910); Perea v. Gómez Hnos., 21 D.P.R. 26 (1914); Mulero v. Martínez, 58 D.P.R. 321 (1941). Además, entendimos que al provenir dicho estatuto del common law lo propio era acudir a la jurisprudencia norteamericana para desarrollar las doctrinas aplicables. Rivera v. Martí-nez, 26 D.P.R. 760 (1918). Estas razones, entre otras, expli-can por qué en nuestro país la acción en daños y perjuicios por libelo se alimentó, principalmente, de doctrinas an-gloamericanas y, por ende, a ellas corresponde en gran me-dida su construcción actual.
No fue hasta 1963 que en Romany v. El Mundo, Inc., 89 D.P.R. 604, 617-618 (1963), reconocimos una acción en da-ños y perjuicios por libelo al amparo del Artículo 1802 del Código Civil de 1930 (31 L.P.R.A. see. 5141). La justifica-ción para ello fue que la Ley de 1902 exigía, como requisito indispensable y necesario para que se pudiera ejercitar la acción en daños y perjuicios por libelo, que la difamación fuera maliciosa, mientras que al amparo del Artículo 1802 del Código Civil, supra, era suficiente que la parte deman-dada hubiese actuado negligentemente. En fin, este Tribunal concluyó que cuando una parte no podía probar una causa de acción de libelo al amparo de la Ley de 1902, por ausencia del ingrediente de malicia, la persona perjudi-cada podía reclamar al amparo del Artículo 1802 del Có-digo Civil, supra, siempre que hubiese mediado culpa o negligencia de la parte demandada y estuvieran presentes los demás elementos indispensables de esta causa de acción.
Un año después, el Tribunal Supremo de Estados Unidos resolvió el histórico caso New York Times Co. v. Sullivan, 376 U.S. 254 (1964). En éste concluyó que el derecho a la libertad de expresión, reconocido en la Primera Enmienda de la Constitución de Estados Unidos, exige que cuando la parte demandante en una causa de acción sobre *703 daños por libelo sea un oficial público, se le requerirá pro-bar que la información publicada era falsa y que el sujeto demandado actuó con conocimiento de que esa falsedad o con grave menosprecio de la verdad.(6) En este caso, el más alto Foro federal estableció un balance entre dos derechos fundamentales, a saber, la libertad de expresión y el dere-cho a la reputación. Entendió que es necesario el debate robusto y abierto sobre la cosa pública que podría incluir ataques vehementes, cáusticos y a veces desagradable-mente cortantes contra funcionarios gubernamentales y públicos, sin desatender por ello el vital objetivo de defender la reputación personal. Al respecto, el Tribunal declaró que una norma que disuadiera el que se criticara la con-ducta de los oficiales públicos, aunque fuera para garanti-zar que se publicara solamente la verdad sobre todas sus actuaciones, sería en detrimento de la libertad de expresión. Id., pág. 279.
La doctrina adoptada en New York Times Co. v. Sullivan, supra, se fue desarrollando en varias opiniones poste-riores del Tribunal Supremo federal, hasta que en 1974 se resolvió el caso Gertz v. Robert Welch, 418 U.S. 323, 341 (1974).(7) En esta opinión, el Tribunal esclareció el derecho *704 aplicable cuando la parte demandante en la acción por difamación es una persona privada. Dispuso entonces que en ese caso los estados podían definir el estándar de respon-sabilidad apropiado, siempre que le exigieran al recla-mante probar que el sujeto demandado actuó con algún grado de culpa. En otras palabras, cuando la parte deman-dante en una acción de daños por libelo es una persona privada, se le puede exigir probar que el individuo deman-dado actuó con un grado de culpa menor que el que se le exige al demandante que es figura pública. A éste se le requiere demostrar que la actuación del demandado se rea-lizó con malicia. (8)
Durante la década de 1970 este Tribunal se esforzó en revitalizar nuestra tradición civilista y demás fuentes au-tóctonas del sistema de derecho puertorriqueño. Trías Monge, op. cit., págs. 297-306. En dicho contexto, la opi-nión del Juez Presidente Trías Monge en Cortés Portalatín v. Hau Colón, supra, colocó sobre nuevas bases el Derecho sobre difamación. La opinión afirmó, por vez primera, que “la fuente principal ... contra injurias es ... [la Sección 8 del Artículo II de] la Constitución, no la ley de 1902. Esta sobrevive tan sólo en cuanto es compatible con la *705 Constitución”. Íd., pág. 738. De esta forma se reconoció que la acción por difamación surge del derecho al honor o repu-tación recogido en nuestra Constitución, que a su vez pro-viene de la Declaración Americana de los Derechos y Debe-res del Hombre y de la Declaración Universal de los Derechos del Hombre:
[Al ser un derecho con] aspiraciones de universalidad, desti-lado de muy diversos sistemas jurídicos, ancho es el mundo que se nos brinda para su interpretación justa. No se está obligado por juegos específicos de reglas históricas. La obliga-ción es acatar el mandato constitucional, en consonancia con otras disposiciones de nuestra ley primaria y las realidades del país. íd., pág. 738.
En esta decisión mantuvimos la doctrina norteameri-cana de la inmunidad o privilegio restringido, fundamen-tándolo en referencias puertorriqueñas y angloamericanas. Sin embargo, tal determinación fue tomada luego de explo-rar el enfoque civilista y, en consecuencia, fue una decisión informada.
Dos años después, al resolver Díaz Segarra v. El Vocero, 105 D.P.R. 850 (1977), rechazamos la norma de derecho común anglosajón de causa de acción múltiple, que reconoce una razón de pedir remedio por cada ejemplar de periódico o publicación vendida o entregada. Por el contrario, adoptamos la regla de publicación única, en la cual la edición completa del periódico, revista o libro se considera una sola publicación que da lugar, en caso de libelo, a una sola causa de acción. También dispusimos que el caso se debía ventilar en el distrito correspondiente al domicilio del demandante, pues fue allí que la causa del litigio tuvo mayor dimensión. Para llegar a esa conclusión, nos negamos a resolver “a la luz de los precedentes norteamericanos” y recurrimos, en vez, a la legislación autóctona interpretada de acuerdo con la jurisdicción judicial única establecida en nuestra Constitución. íd., pág. 854. No obstante, reconociendo que en Puerto Rico son obligatorias las *706 interpretaciones del Tribunal Supremo federal sobre la re-lación entre la libertad de expresión y el derecho al honor o la reputación,(9) en cuanto están basadas en la Constitu-ción federal, este Tribunal adoptó, en Torres Silva v. El Mundo, Inc., 106 D.P.R. 415 (1977), la doctrina constitucio-nal establecida en New York Times Co. v. Sullivan, supra. Acorde a ello, y a la protección que brinda nuestra Consti-tución a la libertad de prensa y expresión, la opinión del Juez Asociado Señor Torres Rigual explica que para ser indemnizado por los daños sufridos a causa de una mani-festación difamatoria, un demandante que sea considerado figura pública debe demostrar que la parte demandada ac-tuó con malicia real.(10) Por otro lado, para el caso en que el sujeto demandante fuera una persona privada se mantuvo la norma que requiere que la actuación del ente deman-dado sea negligente, según se ha definido en casos resuel-tos al amparo del Artículo 1802 del Código Civil, supra. Torres Silva v. El Mundo, Inc., supra. Véase, además, Ze-queira Blanco v. El Mundo, Inc., 106 D.P.R. 432 (1977).(11)
Tradicionalmente este Tribunal ha definido la negligencia como la falta del debido cuidado, que a la vez *707 consiste en no anticipar y prever las consecuencias racio-nales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Ramos v. Carlo, 85 D.P.R. 353, 358 (1962). En Torres Silva v. El Mundo, Inc., supra, establecimos los criterios que debe utilizar un tribunal para determinar, en una acción específica de difamación, si la persona deman-dada incurrió en negligencia al hacer la publicación alega-damente libelosa. Estos son los siguientes: (1) la natura-leza de la información publicada y la importancia del asunto sobre el cual trata, especialmente si la información es libelosa de su faz y puede preverse el riesgo de daño; (2) el origen de la información y la confiabilidad de su fuente; (3) la razonabilidad del cotejo de la veracidad de la infor-mación, lo cual se determina tomando en consideración el costo en términos de dinero, tiempo, personal, la urgencia de la publicación, el carácter de la noticia y cualquier otro factor pertinente. Id., pág. 425.
Por otro lado, hemos afirmado que no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general. J. Santos Briz, El Derecho de Daños, Madrid, Ed. Rev. Der. Privado, 1963, págs. 215 et seq., citado en Soc. de Gananciales v. Jeronimo Corp., 103 D.P.R. 127 (1974). En otras palabras, es causa productora de responsabilidad jurídica o adecuada aquella que con mayor probabilidad cause el daño. Como podemos observar, los conceptos de negligencia y causalidad adecuada exigen que, de algún modo, se cumpla con el criterio de previsibilidad. No obstante, para fines de la negligencia lo importante es identificar si el demandado podía prever que su acción u omisión podría causar algún daño. En otro sentido, con el propósito de determinar si existe causa legal o adecuada, debemos evaluar si el demandado podía prever que su acción u omisión podría causar el tipo de daño que se produjo. Véanse: Ginés Meléndez v. Autoridad de Acueduc- *708 tos, 86 D.P.R. 518 (1962); Pabón Escabí v. Axtmayer, 90 D.P.R. 20 (1964); Estremera v. Inmobiliaria Rac., Inc., 109 D.P.R. 852 (1980).
En Torres Silva v. El Mundo, Inc., supra, también co-menzamos a delinear los criterios para determinar si una persona debe considerarse figura pública o privada. Unos años más tarde, en García Cruz v. El Mundo, Inc., 108 D.P.R. 174 (1978), afirmamos que un ex candidato a un puesto electivo continuaba siendo figura pública a los tres meses de su derrota en los comicios. Por lo tanto, le era aplicable la Ley de 1902, según modificada por la doctrina constitucional. En consecuencia, el demandante tenía que demostrar la malicia real, mediante prueba clara, robusta y convincente. En otras palabras, la parte reclamante de-bía señalar hechos que, de ser creídos, demostraran que la persona demandada abrigaba serias dudas sobre la certeza de la publicación.
Así las cosas, en Oliveras v. Paniagua Diez, 115 D.P.R. 257 (1984), extendimos la norma de Torres Silva v. El Mundo, Inc., supra, a un demandado ajeno a los medios de comunicación, requiriéndole a la parte demandante, quién era una figura pública, probar que el sujeto difamador había actuado con malicia real. Entendimos que la libertad de expresión brinda a la ciudadanía en general la misma protección que la ofrecida por la libertad de prensa a los medios de comunicación. Además, reiteramos los elementos que deben concurrir para concluir que urna persona demandada ha adquirido la condición de figura pública: (1) especial prominencia en los asuntos de sociedad; (2) capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público; (3) participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones involucradas. Id., pág. 422.
Poco tiempo después, al resolver Clavell v. El Vocero de P.R., 115 D.P.R. 685 (1984), recalcamos que es a *709 nuestro ordenamiento jurídico al que debemos acudir para sopesar los intereses involucrados en casos de difamación. En este campo, la jurisprudencia norteamericana tiene so-lamente carácter ilustrativo o persuasivo, salvo las limita-ciones impuestas por la Constitución federal y a la juris-prudencia interpretativa del Tribunal Supremo de Estados Unidos. Siendo ello así, nuestra percepción de los valores involucrados en una acción de este tipo y el modo de con-ciliarios pueden ser enteramente distintos, pues según se-ñala el Tribunal:
Los casos de difamación plantean esencialmente la necesidad de determinar el peso respectivo del interés en una ciudadanía debidamente informada, en fomentar el debate vigoroso sobre cuestiones de interés público, de un lado, y el derecho a la intimidad, del otro. Id., pág. 691.
Acorde a dicho marco conceptual, en este caso recurri-mos, principalmente, a nuestra Constitución, al historial de la Convención constituyente y a la jurisprudencia puer-torriqueña para resolver que la parte demandante era una figura pública y que no se probó que el sujeto demandado había actuado con malicia real, por lo cual procedía dictar sentencia sumaria a su favor. Destacamos en la opinión que no se requiere legislación para que se puedan instar reclamos basados en los derechos fundamentales de nues-tra Carta de Derechos.(12)
El próximo caso en el que abordamos el Derecho sobre difamación fue Soc. de Gananciales v. López, 116 D.P.R. 112 (1985). En éste decidimos que cuando un empleado pú-blico demande en daños y peijuicios por difamación se debe examinar el contexto del litigio para determinar si se le *710 debe considerar como un funcionario público. Se trata, se-gún la opinión, de aplicar criterios “funcionales”, más bien que abstractos. En otras palabras, se debe determinar si las imputaciones por las cuales se reclama atañen a con-ducta del empleado relacionada con su puesto y si dicha conducta reviste interés público. Si se resuelve en la afir-mativa, el funcionario demandante debe probar que la parte demandada actuó con malicia real. En esta decisión también extendimos la doctrina de libelo a casos de calum-nia, es decir, a expresiones difamatorias verbales.(13)
Tras una década resolviendo acciones por difamación so-bre personas públicas, en González Martínez v. López, 118 D.P.R. 190 (1987), permitimos una reclamación en daños por libelo al amparo del Artículo 1802 del Código Civil, supra, instada por la señora madre de un alcalde contra un candidato al puesto público de su hijo. Entendimos, que la señora madre del alcalde era una figura privada. Por ende, el derecho a la libertad de expresión del demandado exigía, para que la acción prosperara, que la demandante demos-trara que las imputaciones eran falsas y que el alegado responsable fue negligente conforme al Artículo 1802 del Código Civil, supra.
En Villanueva v. Hernández Class, supra, que trataba sobre una acción por libelo instada por una persona pri-vada, incorporamos a nuestro ordenamiento la doctrina de *711 informe justo y verdadero y la defensa del comentario im-parcial, elaboradas ambas por la jurisprudencia estadounidense. Aunque reconocimos que correspondía al demandante demostrar que el sujeto demandado actuó ne-gligentemente, expresamos que en nuestra jurisdicción la protección contra publicaciones difamatorias surge de la Constitución del Estado Libre Asociado de Puerto Rico y de la Ley de Libelo y Calumnia de Puerto Rico de 1902.
En años recientes, la única sección de la Ley de 1902 que se ha utilizado para resolver un caso es aquella que define el concepto de libelo, en particular, en cuanto establece una causa de acción por difamación instada por familiares y amigos de una persona ya fallecida. 32 L.P.R.A. see. 3142. En Méndez Arocho v. El Vocero de P.R., 130 D.P.R. 867 (1992), reconocimos la validez de dicha ac-ción y resolvimos que en este tipo de reclamos se exige probar que la parte demandada actuó con malicia y “la intención de denigrar o deprimir la memoria de un muerto y desacreditar o provocar a los parientes y amigos sobrevivientes”. 32 L.P.R.A. sec. 3142.(14) Según la opinión mayoritaria, en estos casos no es suficiente la “mera negli-gencia” del demandado sino que se debe demostrar que este actuó “de manera intencional o con negligencia crasa y grave menosprecio de la verdad”. Méndez Arocho v. El Vo-cero de P.R., supra, pág. 879. Dos años más tarde, en Soc. de Gananciales v. El Vocero de P.R., 135 D.P.R. 122, 127-128 (1994), recurrimos a nuestra normativa de responsabi-lidad extracontractual al resolver que la doctrina que re-quiere que la publicación alegadamente difamatoria contenga una referencia específica al demandante (of and concerning the plaintiff) no impide que terceros recurran al Artículo 1802 del Código Civil, supra, para reclamar por *712 los daños sufridos por ellos, si en la publicación se identi-fica a la persona cuya difamación les ha causado daños.
En esa opinión afirmamos que el objeto del derecho tutelado en la acción por difamación es la reputación personal y el buen nombre del sujeto injuriado públicamente. A tales efectos, el propósito de una acción en daños por difamación es compensar al que sufre un daño en su reputación. Por consiguiente, la reclamación por difamación puede estar contenida o inmersa dentro de una acción general de daños, pero no agota la totalidad de los remedios provistos por ésta. La acción al amparo del Artículo 1802 del Código Civil, supra, es más abarcadora que la acción por difamación porque permite que la pérsona perjudicada, además de ser compensada exclusivamente por la lesión causada a su reputación y a sus relaciones en la comunidad, sea resarcida por otros daños resultantes, como lo son las angustias mentales y morales. Según la opinión, hay que tener esto presente al considerar si deben utilizarse doctrinas elaboradas por el “common law” cuando se adjudican reclamaciones presentadas al amparo del Artículo 1802 del Código Civil, supra, por daños y angustias mentales causadas por libelo.
En Garib Bazain v. Clavell, 135 D.P.R. 475 (1994), con-sideramos prudente que al interpretar las disposiciones de nuestra Constitución sobre la protección contra ataques abusivos a la honra, reputación y vida privada o familiar, al igual que el derecho a la libertad de expresión y prensa, incorporáramos a nuestro ordenamiento jurídico las doctri-nas angloamericanas de hipérbole retórica y opinión.
Posteriormente, decidimos Ojeda v. El Vocero de P.R., 137 D.P.R. 315 (1994), en el cual, si bien reiteramos la exis-tencia en nuestra jurisdicción de dos causas de acción en daños por difamación, es decir, la establecida en la Ley de 1902 y la derivada del Artículo 1802 del Código Civil, tam-bién expresamos que “dicha dicotomía parece ser ya inne-cesaria, habida cuenta [de] que [ya] jurisprudencialmente *713 se han dejado sin efecto [la mayoría de las] disposiciones de la Ley de Libelo y Calumnia” y las demás son innecesarias. Íd., pág. 326.(15) Añadimos, que como la Ley de Libelo y Calumnia de Puerto Rico ha perdido gran parte de su importancia después de la aprobación de la Consti-tución del Estado Libre Asociado de Puerto Rico, los casos relacionados con este tema se deben resolver, como norma general, según la normativa de los daños y perjuicios extracontractuales. También nos reafirmamos en que es a nuestro derecho al que se debe acudir para sopesar los in-tereses involucrados en un caso por difamación, toda vez que Puerto Rico tiene facultad para establecer sus normas de responsabilidad en casos de difamación siempre que no se imponga una responsabilidad absoluta, ni se reduzca el contenido de la Primera Enmienda de la Constitución federal, supra. Reiteramos, a su vez, que en estos casos la jurisprudencia norteamericana sólo tiene valor persuasivo.
En ese caso también concluimos que la doctrina cognoscitiva del daño aplica a las acciones en daños y perjuicios por difamación. Por lo tanto, el término prescriptivo de dicha acción se comienza a contar desde el momento cuando el demandante se entera del daño y de quién se lo causó. Sin embargo, se presume que ello ocurrió el mismo día de la publicación objetada, por lo cual corresponde a la parte demandante probar que realmente ocurrió en una fecha posterior. Decidimos así porque “este Foro, como árbitro final de las controversias locales, debe adoptar las normas que sean más justas, razonables y equitativas conforme a nuestra idiosincrasia, y rechazar una regla de otra jurisdicción, por ilustrativa y persuasiva que sea, que conflija con nuestra tradición jurídica o que choque con nuestro sentido de la justicia”. Íd., págs. 331-332.
*714 Siguiendo tal línea analítica, en Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560 (1995), reiteramos la aplicabilidad, en nuestro derecho sobre difamación, de la doctrina de publicación única y la teoría cognoscitiva del daño. Además, resolvimos que la publicación de una serie de artículos libelosos constituye un daño continuado, por lo cual el término prescriptivo comienza a transcurrir desde el momento en que la parte demandante conoce de la primera manifestación difamatoria. Por último, resolvimos que una carta con la cual se reclame una indemnización por una alegada difamación, siempre que cumpla los requisitos jurisprudenciales, interrumpe la prescripción, institución de derecho sustantivo que se rige por las disposiciones del Código Civil de Puerto Rico.
Unos años después, en Pérez v. El Vocero de P.R., 149 D.P.R. 427 (1999), reafirmamos que la fuente primaria de la protección contra injurias es la Constitución y que la Ley de 1902 sobrevive tan sólo en cuanto es compatible con aquélla. Aludimos a nuestro código de derecho privado para explicar que cuando la parte demandante es una figura privada, el grado de culpa requerido para que la persona demandada sea responsable por difamación es la negligencia. En este caso se publicó un reportaje que imputaba delito y, como ilustración de éste, se incluyó una fotografía del rostro del demandante, quien era una persona privada que no era el sospechoso del crimen. Entendimos que a pesar de que la noticia y la foto, examinadas de forma independiente, no resultan difamatorias, vistas en conjunto, como fueron publicadas, le imputaban la comisión del delito al demandante.
En fin, el desarrollo de la doctrina vigente en torno al derecho sobre difamación demuestra que prácticamente todo el texto de la Ley de 1902 se ha eliminado del Derecho puertorriqueño, salvo la Sección 3142 del referido estatuto, supra, que establece una causa de acción por difamación instada por familiares y amigos de una persona *715 ya fallecida. Véase Méndez Arocho v. El Vocero de P.R., supra.(16) Reiteramos, pues, que para resolver estos casos corresponde recurrir al derecho privado recogido en nues-tro Código Civil y a nuestra tradición civilista. Véanse: Soc. de Gananciales v. Jeronimo Corp., supra; Valle v. Amer. Inter. Ins. Co., 108 D.P.R. 692 (1979); Estremera v. Inmobiliaria Rac, Inc., supra; Jiménez v. Pelegrina Espinet, 112 D.P.R. 700 (1982).
B. Veamos ahora cómo se organizan las fuentes del de-recho sobre difamación en otros ordenamientos civilistas. En primer término, debemos reconocer que en la mayoría de los países que pertenecen a dicha tradición jurídica, la difamación está regulada penal y civilmente. De hecho, el Artículo 118 del Código Penal de Puerto Rico de 1974 de-rogado establecía el delito de difamación, clasificado como delito contra el honor. 33 L.P.R.A. see. 4101. Sin embargo, en el 2003 el Tribunal de Apelaciones Federal para el Primer Circuito declaró inconstitucional el delito de difama-ción, en el contexto de figuras públicas. Mangual v. Rotger-Sabat, 317 F.3d 45 (1er Cir. 2003). Poco tiempo después este delito fue eliminado de nuestro ordenamiento, al no ser incluido en el Código Penal del Estado Libre Asociado de Puerto Rico de 2004.
En España, el derecho al honor es de carácter fundamental, reconocido en el Artículo 18 del Capítulo II del *716 Título Primero de la Constitución española de 1978. A la vez, este derecho encuentra protección tanto en la esfera penal como en la civil. El Título XI del Código Penal espa-ñol de 1995 recoge los delitos de injuria y calumnia en los Artículos 205 al 216.(17) Por otro lado, el Código Civil espa-ñol no mencionaba, antes de su revisión, los derechos de la personalidad.(18) Fue la jurisprudencia la que los reconoció por primera vez y lo hizo respecto al daño moral causado al honor, en la Sentencia del Tribunal Supremo de 6 de diciembre de 1912. Esto al amparo del Artículo 1902 del Có-digo Civil, que recoge el principio general de responsabili-dad extracontractual.(19) Sin embargo, mediante la Ley Orgánica 1/1982, de 5 de mayo, de protección civil del de-recho al honor, la intimidad personal y familiar y a la pro-pia imagen, se desarrollan dichos derechos particular-mente.
A pesar de que la acción civil por difamación ya existía en España desde los inicios del siglo XX al amparo de las disposiciones generales del Código Civil, antes de la dé-cada del 1980 no era muy común. Es por ello que algunos tratadistas entienden que el Derecho Civil español no co-menzó a desarrollar doctrinas sobre difamación plena-mente hasta la Constitución española de 1978 y la Ley Orgánica 1/1982, de 5 mayo de 1982, ya que éstas ofrecie-ron a los perjudicados mayor celeridad y facilidad para ob-tener judicialmente una indemnización por una lesión al derecho al honor. Véanse: J. Plaza, El derecho al honor y la *717 libertad de expresión, Valencia, Tirant Lo Blanch, 1996; O’Callaghan Muñoz, Libertad de expresión y sus limites, Madrid, Ed. Rev. Der. Privado, 1991. Sin embargo, otros eruditos explican que la explosión posconstitucional de los procesos por difamación se ha debido también al robuste-cimiento definitivo de la libertad de expresión y prensa y su uso efectivo por los medios, así como la aparición del debate público propio de una sociedad democrática. Muñoz Machado, op. cit., pág. 52.(20)
En Francia, las reclamaciones por difamación o injuria son generalmente gobernadas por leyes penales. John Hayes, The Right to Reply: A Conflict of Fundamental Rights, 37 (Núm. 4) Colum. J.L. & Soc. Probs. 551 (2004). (21) Sin embargo, cuando las manifestaciones alega-damente difamatorias no cumplen con los criterios para ser un acto ilícito penal, pero aun así la persona peijudi-cada ha sufrido un daño a causa de las actuaciones del otro sujeto, se puede presentar una demanda fundamentada en el Código Civil francés. íd. Es así porque la Corte de Casa-ción francesa ha decidido que se puede reclamar por aten-tados contra el derecho a reputación al amparo del Artículo 1382 del Código Civil francés, que es el que regula las obli-gaciones que surgen de los delitos o cuasidelitos. J. Bell, S. Boyron y S. Whittaker, Principles of French Law, Nueva York, Oxford University Press, 1998, pág. 368.(22)
En los Países Bajos, la causa de acción civil por infringir *718 el honor o la reputación surge de los principios generales de responsabilidad extracontractual contenidos en el Có-digo Civil holandés. M. McMahon, Defamation Claims in Europe: A Survey of the Legal Armory, 19 Comm. Law 24, 27 (Winter 2002). En Alemania, a su vez, el Tribunal Cons-titucional ha resuelto que se puede reclamar indemniza-ción por los daños causados a los derechos de la personali-dad, entre los cuales se define el derecho al honor, fundamentándose en el Código Civil de dicho Estado. Id. También en Italia se pueden conceder daños cuando la parte demandante evidencia que su reputación u honor ha sido lesionado como resultado de una manifestación difa-matoria, basándose en el principio general de responsabi-lidad extracontractual comprendido en su Código Civil. Íd.
Por su parte, el Código Civil argentino de 1869, según enmendado, se ocupa de los actos ilícitos dolosos contra las personas, entre los cuales se encuentran las calumnias o injurias de cualquier especie (Artículo 1089) y la acusación calumniosa (Artículo 1090).(23) Dichas reclamaciones civi-les proceden como resultado de la norma general de res-ponsabilidad extracontractual, según la cual los actos u omisiones que causan daños hacen nacer la obligación de reparar el perjuicio que confronte otra persona. Véase J. Mosset Iturraspe, Responsabilidad por daños, Buenos Ai-res, Culzoni Editores, 1998, T. I.
En Canadá, como sabemos, la mayoría de las provincias pertenecen a la tradición de derecho inglesa, eso es, al common law o derecho común inglés, al igual que la generali- *719 dad de los estados de Estados Unidos de América. Sin embargo, el sistema legal de la provincia de Quebec está basado en la ley francesa, por lo cual pertenece a la tradi-ción civilista. En esta demarcación las acciones por difama-ción se fundamentan en el Artículo 1457 del Código Civil, que es análogo a nuestro Artículo 1802, supra. Gilles E. Néron Communication Marketing Inc. v. Chambre des notaries du Québec, 3 S.C.R. 95 (2004).(24)
Es de observar que en la mayoría de los países de tradición civilista las reclamaciones privadas por difamación se fundamentan en el Código Civil, ya sea mediante los principios de responsabilidad extracontractual general o a través de artículos específicos a dichos fines. En Puerto Rico, el Código Civil no contiene un artículo que regule especialmente las acciones por difamación. No obstante, el principio general de responsabilidad extracontractual, recogido en el Artículo 1802 de nuestro Código Civil, supra, se ajusta cabalmente a los mencionados requisitos, exigidos para que proceda una acción por difamación.(25)
C. Sin embargo, como hemos expresado, nuestro derecho sobre difamación está limitado por la Primera Enmienda de la Constitución de Estados Unidos, supra. Por consiguiente, debemos revisar los requisitos que, según ha interpretado el Tribunal Supremo federal, restringen la potestad de los estados para regular la protección del derecho al honor.
En el caso ante nuestra consideración, Televicentro pre-sentó como defensa uno de esos requisitos al aducir que las *720 manifestaciones alegadamente difamatorias que se le im-putaban no se referían específicamente al demandante. Esto, aludiendo al prerrequisito de identificación razona-ble —of and concerning the plaintiff-— reconocido en el de-recho común angloamericano. Dicha exigencia consiste en que para que se resuelva a su favor una demanda por difamación, la parte demandante debe probar que las mani-festaciones alegadamente libelosas o calumniosas se refe-rían específicamente a su persona. B.W. Sanford, Libel and Privacy, 2da ed., USA, Aspen Publishers, Supl. 2008, Sec. 4.1.1; R.D. Sack y S.S. Baron, Libel, Slander and Related Problems, 2da ed., Nueva York, Practising Law Institute, 1994, Sec. 2.8.(26)
El Tribunal Supremo federal ha interpretado que el requisito de identificación específica es de dimensión constitucional, que surge del derecho a la libertad de ex-presión reconocido en la Primera Enmienda de la Constitución de Estados Unidos. New York Times Co. v. Sullivan, supra. Sin embargo, dicho entendido se ha dado siempre en el contexto de críticas o manifestaciones alegadamente difamatorias contra el gobierno o sus funcionarios u oficiales. Id. Véanse, además: Rosenblatt v. Baer, supra; Blatty v. New York Times Co., 728 P.2d 1177 (Cal. 1986). En tal sentido, la doctrina de identificación específica goza de rango constitucional en cuanto está dirigida a impedir que un ataque a la gestión gubernamental o sobre un asunto de interés público pueda dar base a una acción de libelo por los funcionarios públicamente responsables de dicha gestión, lo cual pudiera desalentar o penalizar la discusión y *721 fiscalización pública sobre estos asuntos. No obstante, cabe señalar que el más alto Foro federal no ha extendido el requisito de identificación específica como cuestión de rango constitucional a situaciones en las cuales las críticas se refieran a personas privadas, aunque sigue siendo una exigencia de la doctrina de difamación en el derecho común angloamericano.
Según el escritor Smolla, el requisito de identificación específica es piedra angular de la más profunda y fundamental política social incorporada al Derecho sobre difamación. 1 Smolla, Law of Difamation, Suppl. 2008, See. 4:40:50. Es una exigencia que media entre el derecho al honor y la libertad de expresión. Id. Por ello favorece que se extienda el requisito constitucional a la protección de manifestaciones sobre individuos y corporaciones privadas, al amparo del mismo fundamento que animó las opiniones en New York Times Co. v. Sullivan, supra, y en Rosenblatt v. Baer, supra. Smolla, supra, Sec. 4:40:50. Así, Smolla ex-pone que en una sociedad democrática y libre es vital pro-teger la libertad de expresión de todos los ciudadanos. Es-tima el autor que en la época moderna la necesidad de proteger enérgicamente la libertad de expresión se ex-tiende a declaraciones hechas sobre el sector privado de-bido a la gran importancia y poder que este grupo ha desarrollado. Véase el voto particular del Juez Presidente Earl Warren en Curtis Publishing Co. v. Butts, 388 U.S. 130 (1967).(27) El exigir que la parte demandante en el jui-cio sea la persona que realmente es objeto de la alegada expresión difamatoria, refleja la fuerte política del derecho *722 estadounidense de requerir que la acción por difamación sea personal. Smolla, supra, Sec. 4:40:50.(28)
En Puerto Rico, este Tribunal adoptó por primera vez la doctrina de identificación específica en Rosado v. Fluor International, 81 D.P.R. 608 (1959), en el contexto de una difamación de grupo. Como podemos recordar, en 1959, cuando se resolvió dicho caso, aún no habíamos reconocido la acción por difamación fundamentada en el Artículo 1802 del Código Civil, supra, ni el Tribunal Supremo de Estados Unidos había resuelto New York Times Co. v. Sullivan, supra. Por consiguiente, la Ley de Libelo y Calumnia de Puerto Rico de 1902, supra, estaba en plena vigencia.
Más de treinta años después, en Soc. de Gananciales v. El Vocero de P.R., supra, aplicamos la doctrina de identifi-cación específica nuevamente, pero esta vez fue en una ac-ción en daños por libelo según el Artículo 1802 del Código Civil, supra. En ese caso un funcionario de gobierno re-clamó por los daños que le causó un artículo sobre su ges-tión oficial publicado por el periódico. Reconocimos que por imperativo constitucional no procedía una reclamación en daños contra un medio de la prensa por publicar informa-ción que constituya un ataque impersonal contra la gestión de gobierno o cualquier otra de trascendencia pública, en ausencia de una referencia a alguna persona específica e *723 individualizada. Sin embargo, resolvimos que en términos constitucionales las manifestaciones alegadamente difa-matorias satisfacían el requisito de referencia específica porque fueron lo suficientemente personales al imputarle al funcionario el haber actuado de forma indebida. Afirma-mos, a su vez, que el requisito de referencia específica o declaración sobre la parte demandante y relativa a éste limita el derecho a demandar por falsedad injuriosa, ya que concede derecho a aquellos que son objeto de críticas y se lo niega a aquéllos que meramente se quejan por mani-festaciones no específicas que entienden que los peijudican.
D. Examinemos ahora las normas pertinentes a la consideración de mociones de sentencia sumaria en casos como el presente. Sabemos que la sentencia sumaria es el mecanismo procesal mediante el cual se le confiere discreción al juzgador para dictar sentencia sobre la totalidad de una reclamación o sobre cualquier controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaría. Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Este mecanismo es parte integral de la protección constitucional disponible al demandado en casos de difamación. Cabrero v. Zayas, 167 D.P.R. 766, 769 (2006, opinión de conformidad de la Juez Asociada Señora Rodríguez Rodríguez; Pérez v. El Vocero de P.R., supra; García Cruz v. El Mundo, Inc., supra, pág. 182. Incluso, hemos afirmado que la libertad de prensa y expresión ha ocasionado que sean un tanto distintas las normas que debemos aplicar al momento de considerar una moción de sentencia sumaria en un caso de libelo. Villanueva v. Hernández Class, supra, pág. 643.
En estos casos el propósito del aludido mecanismo procesal es evitar que la prolongación de los litigios tenga un impacto disuasivo sobre la libertad de expresión. Villanueva v. Hernández Class, supra, pág. 643; Oliveras v. Paniagua Diez, supra, pág. 269; García Cruz v. El Mundo, *724 Inc., supra, pág. 182. En atención a ello, hemos establecido que las normas aplicables a la figura procesal de la senten-cia sumaria serán interpretadas de forma más rigurosa a favor del medio de prensa que promueve la solicitud. Pérez v. El Vocero de P.R., supra, pág. 445. Véase, además, Villa-nueva v. Hernández Class, supra. Ahora bien, ello no sig-nifica que la parte que solicita que se dicte sentencia su-mariamente no tenga la carga de demostrar que procede conceder el remedio solicitado. Íd.
En los casos por difamación hemos reconocido dos formas distintas para establecer qué procede en derecho para dictar sentencia sumariamente. En primer lugar, se puede demostrar que no existe controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, los sucesos alegados no son suficientes para establecer causa de acción alguna, ya sea porque se incumplen los requisitos necesarios o se configura una defensa afirmativa. Cabrero v. Zayas Seijo, supra; Pérez v. El Vocero de P.R., supra, pág. 446. La evidencia por utilizarse consiste en las declaraciones juradas y prueba documental admisible que el promovente someta con su moción o que obre en autos. 32 L.P.R.A. Ap. Ill, R. 36.1; Asoc. Pesc. Pta. Figueras v. Pto. del Rey, 155 D.P.R. 906 (2001); Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. 716 (1994). Una vez el promovente justifique la desestimación sumaria, el demandante debe controvertir los hechos pertinentes con declaraciones juradas o prueba documental admisible. Vera v. Dr. Bravo, 161 D.P.R. 308 (2004); Jusino et als. v. Walgreens, 155 D.P.R. 560 (2001). Como la sentencia sumaria es parte de la protección constitucional de los medios de comunicación en los casos de libelo, el tribunal, en vez de examinar la evidencia que se le presente de la forma más favorable a la parte demandante promovida, exigirá a ésta mayor rigor en su oposición para que pueda derrotar la moción de sentencia sumaria de la prensa. Pérez v. El Vocero de P.R., supra, pág. 446.
*725 La segunda manera en que el promovente puede cum-plir con su carga inicial es alegando y demostrando que el demandante no tiene evidencia suficiente para establecer los requisitos de su reclamación, es decir, que carece de prueba para demostrar algún elemento esencial de la causa de acción. Pérez v. El Vocero de P.R., supra, págs. 446-447; Medina v. M.S. & D. Química P.R., Inc., supra, pág. 727.(29) Además, tiene que persuadir al tribunal de que no es necesario celebrar una vista evidenciaría y que, como cuestión de derecho, procede que se desestime la reclamación. Id. Luego de que el promovente satisfaga este requisito, el promovido está obligado a producir prueba es-pecífica que, de ser admitida y creída, demuestre todos los elementos de la causa de acción. Íd.; Clavell v. El Vocero de P.R., supra, pág. 696. Para que la sentencia no sea dictada en su contra, el promovido también podría demostrar la ausencia de un descubrimiento de prueba adecuado. Como vemos, en esta modalidad de sentencia sumaria las alega-ciones de la demanda no benefician al demandante.
Por otro lado, debemos señalar que la prueba de la malicia real o de la negligencia debe ser clara, robusta y convincente. Clavell v. El Vocero de P.R., supra; Soc. de Gananciales v. López, supra, pág. 115.(30) Además, hemos resuelto que la suficiencia de la prueba para establecer los aludidos estados es una cuestión estrictamente de derecho. Villanueva v. Hernández Class, supra, págs. 644-645.
*726 hH HH hH
Luego de estudiar y analizar los orígenes y el desarrollo histórico de la tutela judicial al derecho al honor o a la reputación en Puerto Rico, y nuestra cultura jurídica de tradición civilista, resolvemos que el Artículo 1802 del Código Civil, supra, según modificado por la doctrina constitucional, es la fuente de protección civil contra ataques difamatorios en nuestra jurisdicción. El Derecho sobre difamación tiene el propósito de proveer un remedio a los daños causados por ataques a la reputación de una persona. En consecuencia, esta rama del derecho es parte integral de nuestro ordenamiento sobre la responsabilidad civil extracontractual, cuyos principios están recogidos en nuestro Código Civil. En vista de ello, aquella persona que reclame haber sido lesionada en su honor debe establecer que el demandado publicó una expresión falsa y difamatoria sobre la parte demandante, por lo cual sufrió daños, y que la conducta del demandado violó el estándar legal de conducta aplicable a las circunstancias particulares del caso, ya sea éste malicia real o negligencia.
Ahora bien, si el propósito de una acción por difamación es reivindicar el derecho al honor o reputación de la persona injuriada, las manifestaciones alegadamente difamatorias deben entenderse que son dirigidas a la persona del demandante, para que exista una relación de causalidad adecuada entre los daños sufridos y los actos negligentes o culposos del demandado. Es decir, el requisito angloamericano de identificación específica está inmerso en el criterio de causalidad adecuada del Código Civil. He-mos afirmado que es causa legal aquella que ordinariamente produce el tipo de daño que se causó, según la experiencia general. No es ordinario ni razonable que se produzcan daños en la reputación de una persona si las manifestaciones alegadamente difamatorias, ni probable ni razonablemente, se referían a él.
*727 Por otro lado, si un tercero reclama, fundamentándose en el Artículo 1802 del Código Civil, surpra, para solicitar indemnización por los daños sufridos al haberse difamado a otra persona y ésta, a su vez, presenta su propia reclamación, la del tercero se considerará una vez se determine que procede la acción principal. Si la persona alegadamente difamada decide no demandar, la reclamación del tercero deberá cumplir los requisitos correspondientes a la acción de difamación, así como los de su propia acción en daños.
En el caso ante nuestra consideración no existe duda de que en la primera fase del reportaje el demandante no que-daba asociado a la noticia. La controversia surgió respecto a la segunda fase del reportaje, en la cual se informaba sobre una nueva modalidad de fraude bancario y se afir-maba que en la Isla habían ocurrido una serie de crímenes de dicho tipo, mas no se mencionaba el nombre de los sos-pechosos de tales delitos. Durante la transmisión, por unos segundos, se mostró una fotografía obtenida del expediente policiaco, la cual, a su vez, se había extraído del video de la cámara de seguridad de un banco. En esta fotografía apa-recía el rostro del demandante, en la esquina inferior de la imagen. Este se encontraba frente al mostrador o ventani-lla del banco, mientras que el sospechoso se ubicaba en el centro de la fotografía haciendo la fila en espera de ser atendido. Nadie más se observaba en la imagen.
Al examinar detenidamente los videos de las noticias nos percatamos que en ningún momento se mencionó el nombre del demandante ni se identificó su foto con las per-sonas sospechosas de haber cometido el fraude bancario. Además, su aparición en la pantalla fue momentánea y como una figura secundaria, por lo que no se podía asociar razonablemente su efigie con los sospechosos o con el crimen. No era probable que se identificara específica-mente al demandante con el asunto dei reportaje.
*728 En el caso de epígrafe el demandante reclama por difa-mación, eso es, por el daño alegadamente causado a su reputación. Su esposa solicita indemnización por los daños y angustias mentales sufridos a causa de la difamación de su compañero. Por lo tanto, las actuaciones de Televicentro tendrían que ser las causantes de la lesión al honor del reclamante. Sin embargo, la prueba no lleva a esa conclu-sión, independientemente de si las actuaciones de Televi-centro fueron negligentes. Al no haberle imputado un de-lito al reclamante o provocado el menosprecio del pueblo hacia su persona, no hay causalidad adecuada entre las actuaciones de Televicentro y los daños alegadamente su-fridos por el señor Colón Pérez y por la señora Ramírez Alvarez. En otras palabras, no era previsible para Televi-centro que podían ocurrir los tipos de daños por los cuales los demandantes reclaman, es decir, por la lesión en la re-putación del demandante y por las angustias mentales su-fridas por esa razón. Puesto que no existe controversia real sustancial en cuanto a un hecho material de la controver-sia y los hechos alegados, como cuestión de derecho, no son capaces de establecer la causa de acción de difamación, procede dictar sentencia sumaria a favor de Televicentro.
Por los fundamentos expuestos, se revoca la decisión re-currida y se desestima la demanda.

Se dictará sentencia de conformidad.

 A pesar de que el Tribunal de Primera Instancia concluyó expresamente que no existía razón para posponer dictar sentencia sobre la reclamación y ordenó que se registrara la sentencia parcial sumaria, dicha determinación constituyó una resolu-ción interlocutoria. Es decir, el dictamen del tribunal de instancia no es una senten-cia porque no resuelve finalmente la cuestión litigiosa en forma tal que no quede pendiente nada más que la ejecución de la sentencia. Véanse: Echandi Otero v. Stewart Title, 174 D.P.R. 355 (2008); García v. Padró, 165 D.P.R. 324 (2005).

 Entre las referencias al honor contenidas en el texto de las Partidas encon-tramos la siguiente:
“[Q]ue qualquier home que reciba tuerto ó deshonrra, que pueda demandar emienda della en una destas dos maneras qual mas quisiere. La primera es quel faga el que deshonró emienda de pechos de dineros: la otra es en manera de acusación, pidiendo quel que fizo el tuerto, sea escarmentado por ello ...” Las Siete Partidas del Rey Don Alfonso El Sabio, Real Academia de la Historia, Madrid, Eds. Atlas, 1972, T. II, Partida Séptima, Tit. IX, Ley XXI.

 El Código Civil español de 6 de octubre de 1888, promulgado en nueva edi-ción corregida el 24 de julio de 1889, fue aplicado a Puerto Rico el 31 de julio de 1989, mediante Real Decreto. J. Trías Monge, El choque de dos culturas jurídicas en Puerto Rico: el caso de la responsabilidad civil extracontractual, New Hampshire, Equity Publishing Co., 1991, pág. 89. No obstante, como hemos dicho nada proveía sobre los derechos de la personalidad. No fue hasta el 6 de diciembre de 1912, en la famosa sentencia del fraile de Totana, que en España, por vía jurisprudencial, se reconoció una acción por menoscabo del derecho al honor fundamentada en el Artículo 1902 del Código Civil español, análogo al Artículo 1802 de nuestro Código Civil, 31 L.P.R.A. see. 5141.

 Al respecto, el gobernador de Puerto Rico entre 1902 y 1904, William H. Hunt, afirmó:
“[N]o hay método más rápido y práctico de norteamericanizar nuestras nuevas posesiones que aprobando y poniendo en vigor las leyes americanas y la introducción práctica de la jurisprudencia estadounidense.” Fourth Annual Report of Governor of Porto Rico, Government Printing Office, Washington, 1902, pág. 24, citado en Trías Monge, op cit, pág. 98.

 El profesor Bernabé Riefkohl nos explica cómo la adopción de la Ley de Libelo y Columnia de Puerto Rico, Ley de 19 de febrero de 1902 (32 L.P.R.A. sees. 3141-3149), provocó dos anomalías en el derecho de responsabilidad civil extracon-tractual puertorriqueño:
“En términos doctrinales, la nueva ley resultó en una dicotomía sobre el tras-fondo teórico aplicable a nuestro derecho. Aunque la teoría general sobre el derecho de daños y peijuicios en Puerto Rico tenía su origen en el derecho civilista del Código Civil, la ley de libelo se basaba en la tradición norteamericana. Además, en términos prácticos esta dicotomía creó la posibilidad de que existieran dos causas de acción alternas por concepto de los mismos daños.” (Escolios omitidos.) A. Bernabé Riefkohl, Hasta la vista, baby!: Es hora de decir adiós a la ley de Libelo y Calumnia de 1902, 73 (Núm. 1) Rev. Jur. U.P.R. 59, 62-63 (2004).

 En lo pertinente, la Primera Enmienda de la Constitución estadounidense dispone: “Congress shall make no law ... abridging the freedom of speech, or of the press ....” U.S. Const, amend. I, 1 L.P.R.A. Amend. Art. I (ed. 2008), pág. Í71.
Antes de que el Tribunal Supremo de Estados Unidos resolviera New York Times Co. v. Sullivan, 376 U.S. 254 (1964), la parte demandante en una acción en daños por libelo tenía que probar, como norma general, que la expresión publicada se refería a su persona y que lesionaba su reputación o le exponía al odio o desprecio del pueblo, mas no tenía que demostrar que la persona demandada había actuado con culpa o negligencia. Acorde a ello, nuestra Ley de 1902 establece en la Sección 5 una presunción de que hubo malicia en cualquier publicación difamatoria. 32 L.P.R.A. see. 3145. Tal afirmación es incompatible con la doctrina constitucional desarrollada en torno a la libertad de expresión.

 En los años posteriores a su opinión en New York Times Co. v. Sullivan, supra, el Tribunal Supremo federal extendió la doctrina allí adoptada a casos en los cuales la comunidad tiene un interés justificado e importante en la materia objeto de publicación y las personas demandantes son empleados públicos, que tengan o apa-renten tener responsabilidad substancial o control sobre los asuntos gubernamenta-les, Rosenblatt v. Baer, 383 U.S. 75 (1966), y a casos en los cuales la parte reclamante fuera considerada una “figura pública”. Curtis Publishing Co. v. Butts, 388 U.S. 130 (1967); Walker v. Associated Press, 391 U.S. 966 (1968). Además, en una controversia *704 similar a la planteada posteriormente en Gertz v. Robert Welch, 418 U.S. 323, 341 (1974), el tribunal no pudo emitir una opinión mayoritaria al no lograr un acuerdo sobre los fundamentos por los cuales debía resolver. Rosenbloom v. Metromedia, 403 U.S. 29 (1971). Véanse, además: García Cruz v. El Mundo, Inc., 108 D.P.R. 174 (1978); Chico v. Editorial Ponce, Inc., 101 D.P.R. 759 (1973).

 Entre los fundamentos ofrecidos por el tribunal para sostener dicha distin-ción está el que una figura u oficial público usualmente goza de mayor oportunidad para acceder a los medios de prensa y contradecir la mentira o corregir el error, mientras que la reputación de los individuos privados es más susceptible de ser lesionada, por cuya razón el Gobierno debe tener un rol más activo en protegerlos. Gertz v. Robert Welch, supra, pág. 344. Además, se entendió que el oficial público, al igual que la figura pública, se lanza voluntariamente al ruedo público, por lo cual se expone a un juicio notorio más riguroso. Id. Véase, además, Torres Silva v. El Mundo, Inc., 106 D.P.R. 415 (1977).
Por otro lado, el Tribunal Supremo de Estados Unidos aclaró en Beckley Newspapers v. Hanks, 389 U.S. 81 (1967), que el concepto de malicia utilizado en New York Times Co. v. Sullivan, supra, que se refiere a conocimiento de la falsedad o total menosprecio de la verdad, no tiene el mismo significado que la noción de malicia de la doctrina de derecho común norteamericano recogida en nuestra Ley de 1902, la cual se refiere a intención.

 El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147, 148 esc. 1 (1993).

 Antes de aprobarse la Constitución del Estado Libre Asociado, la libertad de palabra, en Puerto Rico, quedaba garantizada por la Sección 3 de la Ley Definiendo Derechos del Pueblo aprobada el 27 de febrero de 1902 y por los principios constitu-cionales desarrollados de la Primera Enmienda de la Const. E.U., supra, que apli-caba tanto a ciudadanos como a extranjeros. Bridges v. Wixon, 326 U.S. 135 (1945). Además, la Ley de Relaciones Federales de Puerto Rico establece que el derecho a la libre expresión se respetará en este país al mismo grado que si Puerto Rico fuese un estado federado de la unión norteamericana. Véase el Art. 2 de la Ley de Relaciones Federales con Puerto Rico, L.P.R.A., Tomo 1, See. 2, ed. 2008.

 La mayoría de los estados de la unión norteamericana han requerido la opción menos exigente bajo Gertz v. Robert Welch, es decir, al igual que Puerto Rico han adoptado un estándar de negligencia cuando las personas demandantes son figuras privadas, mientras que otros estados han exigido estándares mayores de culpa. Para una explicación más detallada sobre este asunto, véase 1 Smolla, Law of Defamation Secs. 3:30-3:32 (1999).
Las opiniones publicadas en Torres Silva v. El Mundo, Inc., supra, y en Zequeira Blanco v. El Mundo, Inc., 106 D.P.R. 432 (1977), no fueron certificadas como opinio-nes del Tribunal. Éstas, emitidas el mismo día, fueron suscritas por el Juez Torres Rigual, a quien se le unieron los Jueces Dávila, Martín y Negrón García.

 En este caso, al igual que en Oliveras v. Paniagua Diez, 115 D.P.R. 257 (1984), expresamos que la vigencia de la Ley de 1902 está condicionada a que sea compatible con la Constitución. En consideración a esto, en 1986 Brau del Toro opinó que la aplicación de dicho estatuto se limitaría, en todo caso, a situaciones en las que la persona demandada es ajena a los medios de comunicación y el sujeto demandante es una persona privada. H.M. Brau del Toro, Los daños y prejuicios extracontractua-les en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1986, Vol. 2, pág. 985.

 La acción de daños y peijuicios por difamación o la acción para exigir res-ponsabilidad civil por injuria y calumnia es una acción torticera genérica que incluye libelo y calumnia. Ojeda v. El Vocero de P.R., 137 D.P.R. 315 (1994). Con ñnes teóri-cos, para que exista libelo se requiere un expediente permanente de la expresión difamatoria además de los otros elementos de la acción. La calumnia se configura cuando se hace una expresión oral difamatoria junto con los otros elementos de la acción. Sin embargo, la malicia era un elemento esencial de la acción de daños y peijuicios por libelo, no así de la de daños por calumnias, en la cual bastaba que la publicación fuera falsa o ilegal. Mulero v. Martínez, 58 D.P.R. 321 (1941). Ahora bien, luego de haberse determinado que la Constitución exige que se pruebe algún grado de culpa para que proceda una acción en daños por cualquier tipo de difamación, no tiene ningún efecto práctico realizar este tipo de distinción. Brau del Toro, op. cit., pág. 1013. Esta distinción es artificial y obsoleta, ya que las causas de acción por libelo y por calumnia se analizan de igual forma. Véase Cortés Portalatín v. Hau Colón, 103 D.P.R. 734 (1975).

 Estudiosos del tema han explicado que la causa de acción que se describe en la Sección 2 de la Ley de 1902 (32 L.P.R.A. see. 3142) no es por difamación, ya que no busca proteger la reputación de los sujetos demandantes ni de la persona fallecida. Bernabé Riefkohl, op cit, págs. 76-77.

 A raíz de la jurisprudencia constitucional, quedan inoperantes varias dispo-siciones estatutarias, entre ellas: la presunción de malicia, la responsabilidad sin falta y la presunción de daños. Ojeda v. El Vocero de P.R., supra.

 Así lo han venido advirtiendo los tratadistas desde 1986, cuando el profesor Brau del Toro opinó que la acción en daños por publicación de imputaciones libelosas de la Ley de 1902 había quedado inoperante, en tanto las únicas disposiciones que se podrían considerar vigentes, de acuerdo con la doctrina constitucional, eran aquellas que contenían definiciones y conceptos, pero que no comprendían derecho sustantivo alguno. H.M. Brau del Toro, op. cit., pág. 1003. A su vez, el profesor Serrano Geyls afirmó, en 1988, que la Ley de 1902 parecía haber perdido casi toda su importancia y que los casos en la época contemporánea se resuelven, principalmente, bajo las doctrinas constitucionales aplicables y el Artículo 1802 del Código Civil, supra. R. Serrano Geyls, Derecho constitucional de Estados Unidos y Puerto Rico, [San Juan], Instituto de Educación Práctica del Colegio de Abogados Puerto Rico, 1988, Vol. II, pág. 1348. Más recientemente, al analizar la jurisprudencia de este Tribunal sobre el derecho de responsabilidad extracontractual, el Profesor Alvarez afirmó la primacía de la Constitución y el Artículo 1802 del Código Civil, supra, en las acciones de libelo. J.J. Alvarez, González, Responsabilidad Extracontractual, 62 Rev. Jur. U.P.R. 903 (1993).

 En otros títulos del Código Penal español de 1995 encontramos distintos delitos contra el honor que son especializados, como por ejemplo las injurias y ca-lumnias contra la corona, que se encuentra en el Artículo 490.3.

 El Artículo 162 del Código Civil español, redactado por la Ley de 13 de mayo de 1981, hace mención a los derechos de la personalidad. Ello es así cuando dispone que los padres que ostenten la patria potestad tienen la representación legal de sus hijos menores de edad no emancipados, excepto para aquellos actos relacionados a los derechos de la personalidad que el hijo, de acuerdo con las leyes y a sus condicio-nes de madurez pueda realizar por sí mismo.

 El Artículo 1902 del Código Civil español establece que “[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a repa-rar el daño causado”.

 Al respecto, es menester resaltar que la libertad de expresión y prensa fue proclamada como derecho fundamental por el Artículo 20 del Capítulo II del Título Primero de la Constitución española de 1978, luego de poco más de 35 años de dictadura militar.
Además, el hecho de que en España se reconoce una causa de acción por recti-ficación contribuye a que no se practique tanto el derecho de daños por difamación. Véase F. Balaguer Callejón y otros, Derecho Constitucional, Madrid, Ed. Tecnos, 2005, Vol. II, pág. 171-3. Por último, en la época preconstitucional predominaban absolutamente las vías penales de reparación de agravios. S. Muñoz Machado, Li-bertad de prensa y procesos por difamación, Barcelona, Ed. Ariel, 1988, pág. 50.

 Véase Ley de Libertad de Prensa, Ley de 29 de julio de 1881.

 El Artículo 1382 del Código Civil francés dispone que “cualquier hecho de la persona que cause a otra un daño obligará a aquella por cuya culpa se causó a repararlo”.

 Los artículos mencionados disponen lo siguiente: “Artículo 1089. Si el delito fuere de calumnia o de injuria de cualquier especie, el ofendido sólo tendrá derecho a exigir una indemnización pecuniaria, si probase que por la calumnia o injuria le resultó algún daño efectivo o cesación de ganancia apreciable en dinero, siempre que el delincuente no probare la verdad de la imputación.
“Artículo 1090. Si el delito fuere de acusación calumniosa, el delincuente, ade-más de la indemnización del artículo anterior, pagará al ofendido todo lo que hubiese gastado en su defensa, y todas las ganancias que dejó de tener por motivo de la acusación calumniosa, sin pexjuicio de las multas o penas que el derecho criminal estableciere, tanto sobre el delito de este artículo como sobre los demás de este capítulo.”

 El Artículo 1457 del Código Civil de Quebec dispone:
“[T]oda persona tiene el deber de acatar las normas de conducta que pesan sobre él, de acuerdo a las circunstancias, uso ordinario de la ley, de manera que no le cause daños a otros. Cuando él está dotado de razón y falla en su deber, es respon-sable por cualquier daño o pequieio que cause a otra persona por su culpa y es responsable de la reparación del peijuicio, independientemente de la naturaleza fí-sica, moral o material.” (Traducción nuestra.]

 En lo pertinente, el referido artículo lee como sigue: “el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.” 31 L.P.R.A. sec. 5141.

 El quantum de prueba que se ha requerido para demostrar que la expresión difamatoria se refiere a la persona del demandante es, en la mayoría de estados, la preponderancia de la prueba, mientras que en los otros se exige que la evidencia sea clara y convincente. D.A. Elder, Defamation: A Lawyers Guide, Sec. 1:30, pág. 35 esc. 28. Ahora bien, la prueba presentada para cumplir con el requisito de identificación razonable no debe ser confundida con la evidencia que se requiere para probar que una expresión es difamatoria, eso es que sea falsa y que impute delito o provoque menosprecio. R.D. Sack, Libel, Slander and Related Problems, 2da ed., Nueva York, Practising Law Institute, 1994, Sec. 2.7.3.4.

 Varios tribunales estatales y federales de Estados Unidos de América han reconocido, en casos en que la parte difamada no es un funcionario público, que el requisito de identificación específica es uno constitucional, exigido por la Primera Enmienda de la Constitución Federal, supra. Barger v. Playboy Enterprises, Inc., 564 F. Supp. 1151 (D. California 1983); Dong v. Leland Stanford Jr. U. Trustees, 191 Cal. App. 3d 1572(1987); Auvil v. CBS 60 Minutes, 800 F. Supp. 928 (D. Washington 1992); Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp.2d 1035 (D. California 1998); Ferlauto v. Hamsher, 74 Cal. App. 4th 1394 (1999); Yow v. National Enquirer, Inc., 550 F. Supp. 2d 1179 (D. California 2008).

 En el umbral de cada acción por difamación, la parte demandante tiene que demostrar que en algún sentido definitivo y directo es la persona contra quien la expresión difamatoria se dirige, esto es, tiene que probar que es quien sufre el daño a su reputación. Smolla, supra. La pauta no requiere que la parte demandante sea nombrada específicamente. D.A. Elder, Defamation: A Lawyers Guide, Nueva York, Clark Boardman Callaghan, Sec. 1:30, 1993. Una manifestación se debe entender como que identifica específicamente al sujeto demandante cuando la audiencia o los receptores, correcta o erróneamente, pero razonablemente, así lo comprenden. Smo-lla, supra, Sec. 4:42. Por consiguiente, una referencia no intencionada puede causar que el demandado sea responsable solamente si la audiencia entiende razonable-mente que las declaraciones alegadamente difamatorias identifican específicamente al demandante. Id. Es relevante para medir la razonabilidad de la creencia el que sea un grupo pequeño o sólo una persona. Id., See. 4:44. Por otro lado, los casos, generalmente, rechazan cualquier sugerencia sobre la intención real de la parte de-mandada o la impresión de la propia persona demandante sobre la intención que tenía el sujeto demandado de identificarlo. Elder, op. cit., Sec. 1:30; Sack, op. cit., Sec. 2.8.1.

 En esta modalidad de sentencia sumaria la parte promovente debe demos-trar, luego de transcurrido un tiempo adecuado y razonable para el descubrimiento de prueba, que de los documentos que acompañan su solicitud o del expediente del tribunal surge que la parte promovida no cuenta con evidencia suficiente para pro-bar un elemento esencial de su caso, sobre el cual tiene el peso de la prueba. Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. 716 (1994).

 Para la negación de un derecho fundamental, el debido proceso de ley exige que el valor y suficiencia de la prueba sea medido con el criterio de prueba clara, robusta y convincente. In re Caratini Alvarado, 153 D.P.R. 575 (2001); P.P.D. v. Admor. Gen. de Elecciones, 111 D.P.R. 199, 223 (1981).